*355 PER CURIAM.
¶ 1. Attorney Francis Schmitz, who has been designated as the special prosecutor representing the State of Wisconsin throughout the proceedings in this court, has filed a motion for reconsideration of a portion of this court's July 16, 2015 decision. Attorney Schmitz also asks this court to stay its mandate regarding the documents and data gathered during the investigation while the prosecution team determines whether to seek federal review of our decision. In response, some of the Unnamed Movants (as that term was defined in the July 16, 2015 majority opinion) challenge whether Attorney Schmitz retains any authority to act as the special prosecutor. The Unnamed Movants also argue that the motions should be denied because they fail to meet the relevant standards for relief.
¶ 2. We first address the question of Attorney Schmitz's authority and hold that, as of the date of this opinion, with the exception of the limited tasks explicitly imposed on him by this opinion, Attorney Schmitz's authority to act as the special prosecutor in what has become known as "John Doe II"[1] is terminated because his appointment was invalid. We further deny both the motion for reconsideration and the motion for a stay.
*356 As described below, we clarify the portion of the mandate in the July 16, 2015 decision that required Attorney Schmitz to return and destroy documents and electronic data obtained during the John Doe II investigation.
¶ 3. Before we can address the substance of Attorney Schmitz's motions, we must address whether his motions should be dismissed because he lacks authority to continue acting as the John Doe special prosecutor. One of the issues we asked the parties to address in State ex rel. Three Unnamed Petitioners v. Peterson, Case Nos. 2013AP2504— 08-W, was whether Attorney Schmitz's appointment as the special prosecutor was valid. Some of the Unnamed Movants argue that in light of a legal conclusion in Justice David T. Prosser's July 16, 2015 concurring opinion that Attorney Schmitz's appointment was invalid, which was joined by three other justices, Attorney Schmitz lacks standing to pursue a motion for reconsideration or a motion for a stay of this court's decision. On the other hand, Attorney Schmitz argues that the legal ruling of this court in Three Unnamed Petitioners, Case Nos. 2013AP2504-08-W, was an affirmance of the court of appeals' decision denying the Three Unnamed Petitioners' petition for a supervisory writ, which means that he continues to have standing to act as the special prosecutor in all respects, including by filing new motions and other papers in this court. Resolving this issue requires that we clarify the legal effect of the opinions we issued on July 16, 2015.
¶ 4. When we were addressing the merits of Three Unnamed Petitioners, Case Nos. 2013AP2504-08-W, the court's task was to determine whether the court of appeals had properly denied the *357 Three Unnamed Petitioners' petition for a supervisory writ. Accordingly, we looked to the standard of review and the standard for obtaining such a writ. In the July 16, 2015 majority opinion, this court determined that the Three Unnamed Petitioners could not meet one of the requirements for the issuance of a supervisory writ — namely, that the John Doe judge at the time of Attorney Schmitz's appointment, Reserve Judge Barbara Kluka, had violated a plain duty under then-existing law in appointing Attorney Schmitz. Accordingly, this court affirmed the court of appeals' decision denying the Three Unnamed Petitioners' petition for a supervisory writ. Given that standard of review, the determination of no violation of a plain legal duty was the extent of this court's legal ruling in Case Nos. 2013AP2504-08-W with respect to the question of whether the Three Unnamed Petitioners were entitled to the supervisory writ they had requested from the court of appeals.
¶ 5. Indeed, because the issue was presented at that point in time in the context of a supervisory writ petition and the court determined that the writ standard had not been satisfied, there was no need for the majority opinion to reach the issue of whether Attorney Schmitz could continue to act as the special prosecutor. See State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, ¶ 132 n.43, 363 Wis. 2d 1, 866 N.W.2d 165. ("We need not address what effect an unlawful appointment would have had because no violation of a plain legal duty occurred.").
¶ 6. On the other hand, Justice Prosser's concurring opinion proceeded to discuss the underlying legal issue — namely, whether Attorney Schmitz's appoint *358 ment as the special prosecutor had been valid.[2] Justice Prosser interpreted the special prosecutor statute, Wis. Stat. § 978.045, to contain two prerequisites that must be satisfied in order for an appointment of a special prosecutor to be valid: (1) the court or district attorney seeking the appointment of a special prosecutor must first seek assistance from other prosecutors, including from an assistant attorney general, and (2) one of the nine conditions set forth in Wis. Stat. § 978.045(lr) must apply to the situation. Justice Prosser concluded that the appointment of Attorney Schmitz as a special prosecutor for the John Doe II proceedings in the five counties at issue had been invalid because the appointment had not satisfied one of the nine conditions in subsection (lr) of the special prosecutor statute.
¶ 7. Three other justices joined this portion of Justice Prosser's concurring opinion. Two Unnamed Petitioners, 363 Wis. 2d 1, ¶ 306 (Prosser, J., concurring, joined as to Section IV by Chief Justice Roggensack, Justice Ziegler, and Justice Gableman). It should be noted, however, that there was no mandate at the end of Justice Prosser's opinion.[3] Indeed, *359 as in the majority opinion, there was no discussion in Justice Prosser's concurring opinion of the effect of the legal determination that Attorney Schmitz's appointment as special prosecutor was invalid. In essence, given the procedural posture, while there were four justices who reached the same conclusion about a question of law, there was no legal ruling by the court at that point in time on the issue of Attorney Schmitz's past or present authority as the John Doe II special prosecutor.
¶ 8. The fact that the court confined its legal ruling to affirming the court of appeals' denial of the supervisory writ petition that was the subject of its review due to the applicable standard does not mean that Attorney Schmitz should be able to continue to act as the special prosecutor in all respects as if his appointment were valid. That would ignore the reality shown in Justice Prosser's concurrence that a majority of the justices of this court conclude that his appointment was invalid. That legal conclusion of four justices set forth in Justice Prosser's concurrence remains regardless of any subsequent actions or inactions by Attorney Schmitz or anyone else. Attorney Schmitz, however, has chosen to continue to act as the special prosecutor by filing his current motions for reconsideration and a stay in this court. Moreover, he has specifically made a continuing claim in his filings that, because of the denial of the supervisory writ filed by *360 the Three Unnamed Petitioners, he retains complete authority to act as the special prosecutor going forward, despite the writings issued by this court on July 16, 2015. Because we are presented with his continued filings brought in his capacity as the appointed special prosecutor, we now must address the underlying legal question of Attorney Schmitz's authority to act as the special prosecutor under the appointment orders issued by the initial John Doe II judge. If Attorney Schmitz lacks the authority to act as the special prosecutor because his appointment was invalid, then his motions could be dismissed simply on that ground without considering the arguments made in those motions.
¶ 9. For the reasons set forth in Justice Prosser's July 16, 2015 concurring opinion, we hold that Attorney Schmitz's appointment as the special prosecutor in the John Doe II proceedings pending in each of the five counties was invalid. Two Unnamed Petitioners, 363 Wis. 2d 1, ¶¶ 203-39 (Prosser, J., concurring). With three justices having already declared agreement with Justice Prosser's reasoning, there is no reason to repeat that reasoning here.[4]
*361 ¶ 10. The next question, which was not addressed in the July 16, 2015 opinions, is what is the effect of the determination that Attorney Schmitz's appointment was invalid. Because the appointment process and order did not comply with the special prosecutor statute, was the appointment order essentially a nullity from the beginning, rendering void all of Attorney Schmitz's acts as the special prosecutor, or did Attorney Schmitz lose his authority to act at a later time?
¶ 11. We conclude that the proper answer is that the authority of someone who is appointed as a special prosecutor ends at the point in time when a court makes a legal ruling that the appointment was invalid and orders as a matter of law that the individual's authority is terminated. While four justices of this court reached a legal conclusion as part of the July 16, 2015 writings that Attorney Schmitz's appointment was invalid, there was not a legal ruling from the court at that juncture and no order that Attorney Schmitz cease acting as a special prosecutor in the John Doe II proceedings. Given Attorney Schmitz's continuing reliance on Judge Kluka's appointment orders as the basis for continuing to act as the special prosecutor, we now issue a legal ruling and order that, because of the invalidity of his appointment, Attorney Schmitz must cease taking any actions as the John Doe II special prosecutor as of the date of this opinion and order, *362 except for the actions this court directs below to conclude the John Doe II investigation.
¶ 12. We do not hold that because of the invalidity of Attorney Schmitz's appointment, all of his actions as the special prosecutor since his appointment, including his filing of briefs, motions, memoranda, etc. before the John Doe judge, the court of appeals, and this court, were nullities at the time they were taken.[5] Such a ruling would unfairly void actions relied on by the special prosecutor, the lower courts, law enforcement, and the individuals/entities that have been involved with the John Doe investigations and proceedings. A John Doe judge did sign orders that appointed Attorney Schmitz as the special prosecutor in each of the five John Doe II proceedings. Both he and the John Doe judges relied on those orders. As a result of that reliance, the John Doe judge issued search warrants and took other actions. Nullifying those actions now because of his invalid appointment would unfairly upset that reliance without providing any countervailing benefit to the administration of justice.
¶ 13. Moreover, making all of a special prosecutor's actions void ab initio when an appointment order has failed to comply with the special prosecutor statute would carry the potential for grave mischief. If that were the law, a defendant who was being criminally prosecuted by a special prosecutor could potentially wait until after a judgment of conviction had been entered and then obtain a ruling from the trial court (or even an appellate court) that the conviction was invalid because the special prosecutor's actions in *363 filing the criminal complaint and trying the case were legal nullities. Such a rule could undo convictions that were otherwise valid in all respects simply because the appointing judge failed to ensure that the appointment process and order complied with the special prosecutor statute. Where there are no other bases for overturning what a special prosecutor has done, including obtaining a criminal conviction, and no personal rights of the defendant have been violated, justice would be thwarted by allowing a defendant to undo otherwise valid prosecutorial actions.
¶ 14. The rule that we adopt, however, does not leave a defendant (or a subject of a John Doe investigation) without any remedy where a special prosecutor has been invalidly appointed. Where the defendant learns of the grounds for the invalidity of the appointment, the defendant has an incentive to bring that issue to the attention of a court as soon as possible in order to obtain a ruling on whether the appointment was invalid and whether the special prosecutor may continue to act in that capacity. A ruling on that issue would then provide clarity to all as to whether and how the case may proceed.
¶ 15. Our ruling herein, that Attorney Schmitz's authority to act as the special prosecutor in John Doe II terminates with the release of this opinion (except to comply with the limited, specified obligations imposed in this opinion), means that the actions Attorney Schmitz has previously taken, including filing the current motion for reconsideration and motion for a stay, were within his authority at that time. Consequently, we do not dismiss the current motions, as requested by some of the Unnamed Movants.
¶ 16. Having now terminated Attorney Schmitz's authority to act as the special prosecutor, we recognize *364 that to this point he has been the sole named party in these three John Doe proceedings to appear on behalf of the prosecution. We note that Attorney Schmitz has indicated in his recent filings that the prosecution intends to seek review of our July 16, 2015 decision in the United States Supreme Court. Our decision to terminate Attorney Schmitz's authority is not meant to interfere with the ability of the prosecution team to seek Supreme Court review. We simply conclude that, where a court rules that an individual has not been validly appointed to act as a special prosecutor on behalf of the state, it would be illogical to allow the individual to continue to file pleadings and briefs on the state's behalf.[6] To allow such ongoing conduct would render meaningless the legal conclusion of an invalid appointment. Nonetheless, in view of the fact that Attorney Schmitz has been the only member of the prosecution team named as a party in these matters, this ruling has the potential to create problems with respect to who may act on behalf of the prosecution in this court or elsewhere going forward.
¶ 17. We recognize that the five district attorneys have not been named parties in the proceedings in this court. In fact, this court denied a motion to add them as parties as part of its December 16, 2014 order granting review of the three proceedings. That motion, however, was not brought by the district attorneys; it was a motion filed by the Three Unnamed Petitioners at the time of the filing of their petition for review to forcibly add all five of the district attorneys as parties *365 in Case Nos. 2013AP2504-08-W. The district attorneys did not express a desire to become named parties at that point. Indeed, at that point in time there was no need to add the district attorneys as parties because the prosecution was represented by Attorney Schmitz as the special prosecutor.
¶ 18. The fact that the district attorneys were not named parties to the proceedings in this court, however, does not mean that none of them has been involved in the John Doe II investigation and the proceedings in this court.[7] To the contrary, the district attorneys from the five counties and some or all of their assistants have been admitted to participate in the John Doe II proceedings. It should be remembered that it was the Milwaukee County District Attorney and his office that initiated the John Doe II proceeding, led the *366 prosecution for the first year, and then sought the involvement of the four other district attorneys.
¶ 19. While the court did not see a need to force all five of the district attorneys into becoming named parties at the time it granted review, the situation has now changed as a result of the legal ruling in this opinion that Attorney Schmitz will no longer be able to represent the prosecution as the special prosecutor. Accordingly, one or more of the district attorneys could seek to intervene in these actions, which would allow for the prosecution to be represented in future proceedings. Given the inability of Attorney Schmitz to continue acting as the special prosecutor based on his invalid appointment, such a motion to intervene by one or more of the district attorneys would receive prompt review by this court.
¶ 20. We now turn to the substance of Attorney Schmitz's motion for reconsideration. The court's Internal Operating Procedures (IOPs) set forth the standard we have applied to such motions:
Reconsideration, in the sense of a rehearing of the case, is seldom granted. A change of decision on reconsideration will ensue only when the court has overlooked controlling legal precedent or important policy considerations or has overlooked or misconstrued a controlling or significant fact appearing in the record.
Wis. S. Ct. IOP II.J.
¶ 21. We conclude that Attorney Schmitz's motion does not present any grounds to reconsider our prior decision.
¶ 22. The thrust of the motion for reconsideration is an argument that this court erred by not *367 allowing Attorney Schmitz (or presumably the district attorneys) to continue the current John Doe II investigation to the extent of investigating whether there was coordination related to express advocacy.
¶ 23. We conclude that the argument that the previous search warrants and subpoenas were valid because they sought evidence of coordination of express advocacy has been forfeited. When the Unnamed Movants filed motions with the John Doe judge for the return of seized property and to quash subpoenas, they argued that the state's theory of criminal liability on the basis of coordination of issue advocacy was unsupported by statutory and constitutional law. Attorney Schmitz's response to those motions was a frontal counter-attack to the Unnamed Movants' arguments regarding the ability of the state to regulate the coordination of issue advocacy, both under the relevant provisions in Chapter 11 of the Wisconsin Statutes and under the federal and state constitutions. His response never claimed that the subpoenas and search warrants that were the subjects of the Unnamed Movants' motions were valid because they were directed at finding evidence of coordination of express advocacy and never provided any examples of evidence of such express advocacy coordination. Indeed, in his January 10, 2014 order granting the Unnamed Movants' motions, the John Doe judge specifically concluded that "[t]he State is not claiming that any of the independent organizations expressly advocated" and "[tjhere is no evidence of express advocacy." The John Doe judge granted the motions for return of seized property and for quashing subpoenas on the ground that the state's theory that coordination of issue advocacy is regulated by Chapter 11 was legally incorrect.
*368 ¶ 24. It is true that, after the John Doe judge rejected the arguments Attorney Schmitz actually made to support the search warrants and subpoenas, he then attempted to bring express advocacy into the appellate writ case (State ex rel. Schmitz v. Peterson, Case Nos. 2014AP417-21-W) by including a second issue in his writ petition that asked whether "the record"[8] provided a reasonable belief that a campaign committee had violated Wisconsin's campaign finance laws by coordinating with independent disbursement committees that engaged in express advocacy. Indeed, when the supervisory writ petition came to this court via petitions for bypass, this court's December 16, 2014 order included this second issue in its list of issues to be briefed. Attorney Schmitz's attempt to introduce express advocacy coordination in the appellate court and this court's initial inclusion of his new issue, however, do not change the fact that he never raised this issue or made this argument before the John Doe judge. By failing to raise the issue and argument in front of the John Doe judge, Attorney Schmitz forfeited his ability to argue that the subpoenas and search warrants at issue were valid because they were actually intended to obtain evidence of coordination of express advocacy. See, e.g., Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶ 83, 350 Wis. 2d 554, 835 N.W.2d 160 (where party attempted to make fundamentally different argument on appeal than it had made before the trial court, this court deemed the argument forfeited and declined to address it); Tatera v. FMC Corp., 2010 WI 90, ¶ 19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810 ("Arguments raised for the first time *369 on appeal are generally deemed forfeited."). Accordingly, the argument was not addressed in the court's July 16, 2015 decision.
¶ 25. Indeed, even if the court had reached the merits of this issue, the nature of the matter before this court would have required the same result as set forth in the court's July 16, 2015 decision. It must be remembered that it was the John Doe judge's January 10, 2014 order that this court was asked to review in both the original action (Two Unnamed Petitioners v. Peterson, Case No. 2014AP296-OA) and the writ proceeding (State ex rel. Schmitz v. Peterson, Case Nos. 2014AP417-21-W). As noted above, the only means by which Attorney Schmitz attempted to bring coordination of express advocacy before any appellate court was his listing of express advocacy coordination as an issue in his petition for a supervisory writ.
¶ 26. As was thoroughly explained in the July 16, 2015 majority opinion, in order to obtain a supervisory writ from an appellate court ordering the John Doe judge to reverse his January 10, 2014 order, Attorney Schmitz was required to prove that: "(1) an appeal is an inadequate remedy; (2) grave hardship or irreparable harm will result; (3) the duty of the trial court is plain and it must have acted or intends to act in violation of that duty; and (4) the request for relief is made promptly and speedily." Kalal, 271 Wis. 2d 633, ¶ 17.
¶ 27. Attorney Schmitz could not meet this standard for the issuance of a supervisory writ regarding investigation of express advocacy. Given that he was asking this court to direct the John Doe judge to reverse his January 10,2014 order, how could Attorney *370 Schmitz show that the John Doe judge had violated a plain legal duty by failing to rely on a theory that Attorney Schmitz never presented to that judge? It simply cannot be done. Thus, given the limited nature of the writ proceeding that Attorney Schmitz initiated for review of the John Doe judge's ruling and the standards that he was therefore obligated to meet, the writ petition would have been denied even if the express advocacy coordination argument had been considered on the merits.[9]
¶ 28. We now turn to the issue of what should become of the multitude of documents and electronic files that Attorney Schmitz and the prosecution team amassed in the course of the John Doe II investigation, including via subpoenas and search warrants. Having been advised in the motion for reconsideration that the prosecution team presently intends to seek review of the July 16, 2015 decision in the United States Supreme Court and in order to eliminate any confusion about what should happen to the evidence collected during the John Doe II investigation, we modify and clarify the portion of the July 16, 2015 mandate relating to the return of property seized in the investigation and the destruction of copies of documents and other materials obtained through the investigation. The intent of this portion of our mandate was to require that the prosecution team divest itself of docu *371 ments and data that were the product of an investigation based on an invalid theory under Wisconsin's campaign finance laws in order to ensure that the prosecution team would comply with the court's order to cease all activities related to the John Doe II investigation.
¶ 29. We still hold to these results, but we modify the means to accomplish them in order to avoid impeding in any way the ability of the prosecution team to seek certiorari review in the United States Supreme Court. It is for that reason that, with certain exceptions, we do not impose an immediate deadline for Attorney Schmitz and his prosecution team to complete the obligations we impose below. Unless otherwise noted, all of these obligations must be completed within 30 days following the completion of proceedings in the U.S. Supreme Court on any petition for certiorari review. If no petition for certiorari review is filed, these actions must be completed within 30 days after the deadline for filing a petition for certiorari review.
¶ 30. We do impose these obligations on Attorney Schmitz. Although we have now held that he no longer possesses the authority to act as the special prosecutor in conducting the John Doe II investigation or filing documents on behalf of the state, he must still be allowed to perform the tasks that this court now assigns to him in order to rectify the results of the investigation, which we have determined was based on a faulty reading of the law. If Attorney Schmitz could not be required to perform these tasks, there would be no party currently before the court to whom these tasks could be assigned. Moreover, in his reply in support of his motion for reconsideration, Attorney Schmitz strongly contended that he was the person in charge of the John Doe investigation and solely exer *372 cised final decision-making authority. Given this assertion, it is appropriate that this court requires him to ensure that certain actions are performed (whether by him or by members of his prosecution team) and to make representations that those required actions have been completed.
¶ 31. We now turn to the specific tasks that must be performed. First, we continue to require, to the extent it has not already been done, that Attorney Schmitz and his prosecution team return to the rightful owner any computer hardware and other items of tangible personal property that were seized by the prosecution team or law enforcement officers in the course of executing search warrants or obtained in response to subpoenas issued as part of the John Doe II investigation. This must be completed within 30 days of the date of this decision. The return of these items will not impede the preparation of a petition for certiorari review because Attorney Schmitz and his prosecution team will not be obligated to return any copy of data that resided on any such computer hardware, although they will be required at a later date to turn over all such copies to the clerk of this court, as described below.
¶ 32. Second, we require that Attorney Schmitz gather all documents and copies thereof (whether in hard copy or in digital form) and all electronic data and copies thereof obtained as a result of the John Doe II investigation from all persons who worked for or were associated with him and the prosecution team in the John Doe proceedings/investigations. The documents and electronic data that must be gathered also include all copies of documents and of electronic data that were obtained during the John Doe I investigation but were authorized by Judge Nettesheim in an August 10, 2012 *373 order in Milwaukee County Case No. 10JD7 to be used in the subsequent John Doe II investigation.[10] The universe of individuals from whom such documents and electronic data should be gathered must include all individuals, other than the John Doe judge and the employees of the five offices of the clerks of circuit court, who were granted access by the John Doe judge to the documents and/or electronic data obtained or used in the John Doe II investigation. (This would include individuals who were granted access to the documents and electronic data that were the subject of Judge Nettesheim's August 10, 2012 order authorizing use of those documents in a subsequent John Doe II proceeding and investigation.) The documents and electronic data should be collected and organized in a manner that allows the clerk of this court to retrieve specific documents or sets of electronic data, in the event that such retrieval is subsequently ordered.
¶ 33. All of the documents and electronic data described above and all of the copies of such documents and electronic data shall be described on a written index. The index shall describe, with reasonable specificity and consistent with the organization described in *374 the preceding paragraph, the documents or electronic data that have been collected.
¶ 34. Third, we require that all of the documents and electronic data (and all copies thereof) be submitted under seal to the clerk of this court.[11] Once this submission has occurred, no document or piece of electronic data (or any copies thereof) that was gathered in the course of the John Doe II investigation or that was gathered in the John Doe I investigation but authorized to be used in the John Doe II investigation should remain in the possession of Attorney Schmitz, any member of the prosecution team, or anyone who was authorized by the John Doe judge to have access to documents, materials, and electronic data gathered in the course of the John Doe II investigation. The prosecution team should be completely divested of all such documents, materials, and electronic data. The clerk shall not file them as part of the appellate record in *375 this case, but shall merely maintain them in a sealed and secure manner pending further order of the court.
¶ 35. Fourth, at the time that the documents and electronic data are submitted to the clerk of this court, Attorney Schmitz shall file with the clerk of this court and with the John Doe judge the index of the documents and electronic data described above.
¶ 36. Fifth, in addition to filing the index, Attorney Schmitz shall file an affidavit with both this court and the John Doe judge in which he avers that, to the best of his knowledge, he has collected and submitted to the clerk of this court all originals and all copies of documents and electronic data that were obtained in the course of the John Doe II investigation and that were obtained during the John Doe I investigation but were authorized to be used in the John Doe II investigation. The affidavit shall also include an averment that Attorney Schmitz has received written statements from all members of the prosecution team and all individuals who were granted access to John Doe II documents and electronic data that those persons have turned over to him all such documents and electronic data within their possession and that they no longer possess any such documents or electronic data (or copies thereof).
¶ 37. Finally, because we are not requiring Attorney Schmitz and the prosecution team to return and destroy all documents and electronic data immediately, we do require Attorney Schmitz, within 30 days of the date of this decision, to provide written notices to all individuals and organizations whose documents or electronic data were obtained by the prosecution team in the course of the John Doe II investigation or were obtained in the course of the John Doe I investigation and were authorized to be used in the John Doe II *376 investigation.[12] The notice should describe, with particularity, the nature and scope of the documents or electronic data that the prosecution team obtained, and from whom the documents and/or electronic data were obtained. It should also notify the individual or organization that the documents and/or electronic data will be submitted to the clerk of this court pursuant to this court's order and that the clerk of this court will maintain the documents and/or electronic data under seal and in a secure manner until further order of the court.
¶ 38. Having modified and clarified the mandate in our July 16, 2015 decision, we turn to the motion for a stay filed by Attorney Schmitz. In order to obtain a stay pending appeal, Attorney Schmitz would be required to: (1) make a strong showing that he or the prosecution team is likely to succeed on the merits of any further appeal; (2) show that, unless a stay is granted, he and the prosecution team will suffer irreparable injury; (3) show that no substantial harm will come to other interested parties; and (4) show that a stay will do no harm to the public interest. State v. Gudenschwager, 191 Wis. 2d 431, 440, 529 N.W.2d 225 (1995). In light of our modification and clarification of the court's mandate with respect to the disposition of the documents and electronic data obtained in the *377 John Doe II investigation or authorized to be used in the John Doe II investigation, we conclude that Attorney Schmitz cannot show that he or the prosecution team will suffer irreparable injury. The prosecution team will continue to possess all of its work product and all of the evidence gathered in the investigation, subject to the previous orders issued by the John Doe judge, during the time that it would be preparing any petition for U.S. Supreme Court review and until the conclusion of proceedings in that Court. Thus, the prosecution team can suffer no injury during that time. Even after that time, the documents and electronic data will not be destroyed, but will be stored by the clerk of this court in a sealed and secure manner pending further order of this court. Thus, in the event that the investigation would be allowed to proceed at some future date, the documents and electronic data would still be available. They could also potentially be available for use in related civil proceedings, if there is a request and a determination that such use is proper under the circumstances. Consequently, while we have modified and clarified the court's mandate in a manner that grants much of the relief sought by Attorney Schmitz, we deny his motion for a stay.
¶ 39. For the foregoing reasons,
IT IS ORDERED that the motion for reconsideration and the motion for stay are denied.
IT IS FURTHER ORDERED that the mandate of this court is modified and clarified as set forth above.
IT IS FURTHER ORDERED that Attorney Francis Schmitz shall immediately cease acting as the special prosecutor, except that he shall perform the specific tasks imposed on him by the court in this opinion.
*378 By the Court. — The motion for reconsideration is denied, the motion for stay is denied, and the mandate is clarified, as described in the opinion.
¶ 40. ANN WALSH BRADLEY, J., and REBECCA G. BRADLEY, J., did not participate.
¶ 41. N. PATRICK CROOKS, J., passed away while these motions were pending and prior to their final resolution by the court.

 We use the term "John Doe II" to refer to the John Doe proceedings and the accompanying investigation in five counties that were initially presided over by Reserve Judge Barbara A. Kluka and since the fall of 2013 have been presided over by Reserve Judge Gregory A. Peterson. We use the term "John Doe I" to refer to the earlier John Doe proceeding and investigation in Milwaukee County (Case No. 10JD7) that were presided over by Reserve Judge Neal Nettesheim.

 This was not the first time that, despite the court having denied a supervisory writ because the petitioner could not demonstrate a violation of a plain legal duty, the court has gone on to discuss the underlying legal issue. See, e.g., State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 26, 271 Wis. 2d 633, 681 N.W.2d 110 ("Although the Kalals have failed to establish the existence of a plain duty and are not entitled to a supervisory writ, we will address the statutory interpretation question presented by this case.").

 There also was no part of the mandate at the end of the majority opinion that addressed the legal conclusion in Justice Prosser's concurring opinion that the appointment of Attorney Schmitz as the special prosecutor had been invalid. The *359 mandate at the end of the majority opinion merely stated "Petition for supervisory writ denied and decision affirmed in Three Unnamed Petitioners." This tracked the holding set forth in the majority opinion that the petition for supervisory writ must be denied because the Three Unnamed Petitioners had not demonstrated that the John Doe judge had violated a plain legal duty.

 We note that over the last few months, the legislature has passed and the governor has signed two pieces of legislation that affect the conduct of John Doe proceedings in a number of ways, including the appointment of special prosecutors. See 2015 Wis. Act 55 (the 2015 "Executive Budget Act") and 2015 Wis. Act 64. As a result of those enactments, it is now clear that in order for an individual to be appointed as a special prosecutor in a John Doe proceeding, one of the conditions listed in the special prosecutor statute must exist. Wis. Stat. § 978.045(cm) ("The judge may not appoint an attorney as a special prosecutor to assist the district attorney in John Doe proceedings under s. 968.26 unless a condition under par. (bm)l. to 8. exists or unless the judge determines that a complaint received under *361 s. 968.26(2)(am) relates to the conduct of the district attorney to whom the judge otherwise would refer the complaint. This paragraph does not prohibit assistance authorized by s. 978.05(8)."). This statutory revision is consistent with the reasoning of Justice Prosser's July 16, 2015 concurring opinion.

 Rather than voiding an appointed individual's authority to act from the time of an invalid appointment, we hold that the individual's authority to act as a special prosecutor is prospectively voidable by a court.

 While we hold that a special prosecutor may not continue to act on the merits in such a situation, we do not intend to foreclose the special prosecutor from seeking reconsideration or review of the decision terminating his/her authority, to the extent it is otherwise available.

 The dissent criticizes the court for referring to the John Doe II "prosecution team" in this opinion, implying that there was no group of prosecutors, investigators, and others who prosecuted the John Doe II investigation, and that Attorney Schmitz worked alone in prosecuting the John Doe II. Although the court will not disclose any of the specific individuals who clearly worked with Attorney Schmitz on the John Doe II investigation, as the dissent well knows, the John Doe record is replete with prosecution documents that were signed by individuals other than Attorney Schmitz. Given the size and scope of the investigation and the voluminous filings in this court, it would have been impossible for Attorney Schmitz to pursue the investigation and the subsequent appellate proceedings singlehandedly after he became the nominal leader of the prosecution. Finally and most importantly, in his reply in support of the current motions, Attorney Schmitz himself makes multiple references to the "prosecution team" and asserts that, while he consulted members of that team about various matters, he exercised the final decision-making authority during the time he acted as the special prosecutor. To claim that there has not been and is not now a "prosecution team," when the dissent clearly knows otherwise, is disingenuous.

 This would have to be the record that was before the John Doe judge, namely, what the parties had presented to him in their filings.

 The court also notes the very careful way in which Attorney Schmitz has phrased his express advocacy argument. He asserts that there is evidence (somewhere) of coordination between a campaign committee and other organizations, which happened to engage (at some point in time) in express advocacy. He does not affirmatively assert that any particular piece of express advocacy was the subject of specific coordination.

 We do not require that Attorney Schmitz gather and submit to the clerk of this court the work product generated by members of the prosecution team. For example, he is not obligated to gather and submit memoranda, notes, and email messages generated by the prosecution team, even if those documents reference materials gathered or used during the John Doe II investigation. On the other hand, if there is a copy of a document or a computer file containing a copy of electronic data obtained or used during the course of the John Doe II investigation, the copy of the document or the computer file must be detached from the work product document and submitted to the clerk of this court as set forth in this opinion.

 In his reply in support of the motion for reconsideration, Attorney Schmitz stated that the electronic data obtained by the prosecution team in the course of the John Doe II investigation was stored on a portable hard drive that was in the possession of an investigator in the office of the Milwaukee County district attorney. That portable hard drive and any other portable storage devices containing such electronic data must be included within the materials that are submitted to the clerk of this court. If files containing electronic data obtained in the course of the John Doe II investigation are currently stored on the hard drives of computers used by members of the prosecution team or other individuals who were granted access to such data, Attorney Schmitz shall ensure that such prosecution team members copy such data to some form of portable memory (CD-ROM, portable hard drive, flash drive, etc.), which shall be submitted to the clerk of this court, and that the applicable data files are deleted from the computer hard drives.

 For example, if the prosecution team served a subpoena on Individual A's internet service provider that asked for all of Individual A's emails during a specified time period, Attorney Schmitz must notify Individual A that his/her emails from that time period were obtained from the specific internet service provider. Attorney Schmitz is not obligated to notify all of the other individuals who are listed as recipients or senders of Individual A's emails or are mentioned within the text of Individual A's emails.