# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP923-W |
| COMPLETE TITLE: | State of Wisconsin ex rel. Universal Processing Services of Wisconsin, LLC, <br>       Petitioner, <br>   v. <br> Circuit Court of Milwaukee County and the Honorable John J. DiMotto, presiding, Samuel B. Hicks and Merchant Card Services, Inc. <br>       Respondents. |

SUPERVISORY WRIT BEFORE THE SUPREME COURT

| | |
|---|---|
| OPINION FILED: | March 29, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 1, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | John J. DiMotto |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   CONCURRED/DISSENTED: | ZEIGLER, J. concurs and dissents (Opinion filed). <br> BRADLEY, R.G., J. joined by KELLY, J. concur and dissent (Opinion filed). |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioners, there was a brief by *Ryan M. Billings*, *Robert L. Gegios, Melinda A. Bialzik* and *Kohner, Mann & Kailas,, S.C.,* Milwaukee, and oral argument by *Ryan M. Billings.*

For the respondent the cause was argued by *David C. Rice*, assistant attorney general, with whom on the brief(s) was *Brad D. Schimel*, attorney general.

For the respondent, there was a brief by *Joan M. Huffman*, *Paul R. Erickson* and *Gutglasas, Erickson, Bonville & Larson, S.C.,* Milwaukee, and oral argument by *Joan M. Huffman.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.   2016AP923-W
(L.C. No.  2014CV7986)

STATE OF WISCONSIN       :      IN SUPREME COURT

**State of Wisconsin ex rel. Universal Processing Services of Wisconsin, LLC,**

      **Petitioner,**

  **v.**

**Circuit Court of Milwaukee County and the Honorable John J. DiMotto, presiding, Samuel B. Hicks and Merchant Card Services, Inc.,**

      **Respondents.**

**FILED**

**MAR 29, 2017**

Diane M. Fremgen
Clerk of Supreme Court

---

PETITION for supervisory writ. *Dismissed. Rights Declared.*

¶1 SHIRLEY S. ABRAHAMSON, J. Universal Processing Services of Wisconsin, LLC d/b/a Newtek, the plaintiff-petitioner, petitions this court, pursuant to Wis. Stat. § (Rule) 809.71 (2015-16),[1] for a supervisory writ. Newtek asks the court to exercise its constitutional authority to vacate an

---

[1] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

order of the Circuit Court for Milwaukee County, John J. DiMotto, Judge, appointing retired Judge Michael Skwierawski as the referee and to vacate unlawful orders of the referee issued pursuant to the reference. Samuel Hicks and his Idaho company, Merchant Card Services, are the defendants-respondents. The Circuit Court for Milwaukee County and the Honorable John J. DiMotto, presiding, are also named as respondents. The respondents oppose the petition.

¶2 Newtek argues that the circuit court's order appointing the referee expanded the role of referee into the role of de facto circuit court judge in violation of the Wisconsin Constitution and Wis. Stat. § (Rule) 805.06, a rule adopted by this court.[2] Newtek does not challenge the constitutionality of Wis. Stat. § (Rule) 805.06, governing references to a referee.[3]

---

[2] In adopting Wis. Stat. § (Rule) 805.06 in 1975, the court adopted the pre-2003 version of Federal Rule of Civil Procedure 53 with minor modifications. The Wisconsin legislature amended the language of Wis. Stat. § 805.06(1), (3), (4), and (5) set forth in the supreme court order, making editorial, non-substantive changes. Laws of 1975, ch. 218, §§ 158-164.

[3] This court asked the parties to address in letter briefs whether the circuit court's Order of Reference comports with or contravenes the Wisconsin Constitution to the extent that the Order comports with Wis. Stat. § (Rule) 805.06. In view of our holding, we need not, and do not, address the constitutionality of § (Rule) 805.06 or the extent to which a circuit court's Order of Reference must comply with or may differ from the provisions of § 805.06.

2

¶3 The dispute underlying this petition arises from a lawsuit initiated by Universal Processing Services of Wisconsin, LLC d/b/a Newtek (Newtek), a bankcard processing services company, the plaintiff-petitioner, against one of its independent sales agents, Samuel Hicks, and his Idaho company, Merchant Card Services (collectively, Hicks), the defendants-respondents.

¶4 The following issues are presented:

1. Is Newtek's petition for a supervisory writ properly before this court?

2. Has Newtek waived or forfeited its objection to the Order of Reference, is it estopped from challenging the Order, or has it impliedly consented to the Order?

3. Does the circuit court's Order of Reference contravene Article VII, Section 2 of the Wisconsin Constitution vesting judicial power of this state in a unified court system?

4. Does the circuit court's Order of Reference, including the provision that the circuit court's review of the referee's "rulings" shall be based only on the referee's "erroneous exercise of discretion," contravene the Wisconsin Constitution and the Wisconsin statutes and rules regarding circuit court and appellate court authority and practice?

5. Does the circuit court's Order of Reference contravene the parties' right to "obtain justice freely, and without being obliged to purchase it," guaranteed by

3

Article I, Section 9 of the Wisconsin Constitution, or to due process of law, guaranteed by Article I, Section 1 of the Wisconsin Constitution, or Newtek's right to a jury trial, guaranteed by Article I, Section 5 of the Wisconsin Constitution?

6. Should the orders of the referee to date be vacated and should the parties be allowed to request substitution of the judge on remand?

¶5   For the reasons set forth, we conclude as follows:

1. Newtek's petition for a supervisory writ does not meet the requirements set forth in Wis. Stat. § (Rule) 809.71.  The petition was not first filed in the court of appeals and Newtek has failed to show that it was impractical to file the petition in the court of appeals.  We do, however, exercise our constitutional superintending authority under Article VII, Section 3(2) of the Wisconsin Constitution to determine the validity of the Order of Reference.  A declaration of rights is an appropriate vehicle for an exercise of the superintending authority over circuit courts constitutionally granted to this court.[4]  See Part II, ¶¶36-50.

2. Regardless of whether Newtek has waived or forfeited its right to challenge the Order of Reference, is

---

[4] State ex rel. Memmel v. Mundy, 75 Wis. 2d 276, 281, 249 N.W.2d 573 (1977).

4

estopped from challenging the Order, or has impliedly consented to the reference, this court may resolve the issue of the validity of the Order of Reference under its constitutional superintending authority. See Part III, ¶¶51-55.

3. The Order of Reference impermissibly delegated to the referee judicial power constitutionally vested in Wisconsin's unified court system. Accordingly, the Order does not survive Newtek's constitutional challenge. See Part IV, ¶¶56-82.

4. The circuit court's Order of Reference, including the provision that the circuit court's review of the referee's "rulings" shall be based only on the referee's "erroneous exercise of discretion," contravenes the constitution and statutes or rules regarding circuit court and appellate court authority and practice. It infringes on the legislature's authority to define a circuit court's appellate jurisdiction. See Part V, ¶¶83-88.

5. We do not decide the instant case on the basis of Article I, Section 9 of the Wisconsin Constitution, the due process clause of Article I, Section 1 of the Wisconsin Constitution, or the right to jury trial of Article I, Section 5 of the Wisconsin Constitution, but we note that reference to a referee is the exception, not the rule; that there are constitutional limits on the powers of a referee; and that a

5

reference can jeopardize a litigant's access to the justice system, due process, and right to a jury trial. The Wisconsin Constitution requires the state to provide a judicial system for the resolution of disputes. Access to state courts for conflict resolution is thus implicit in the state constitution. We express our concern that the use of referees increases the costs of litigation and may cause delay and, in certain cases, may deprive litigants of access to courts. See Part VI, ¶¶89-103.

6. To the extent the parties have agreed to abide by an order or ruling of the referee relating to discovery, that ruling or order shall stand. To the extent either party has objected to an order or ruling of the referee relating to discovery, that ruling or order shall be vacated. Any ruling or order of the referee on any dispositive motion is vacated. Either party may request substitution of the judge under Wis. Stat. §§ 801.58(1) and (7). See Part VII, ¶¶104-110.

¶6 We begin in Part I by setting forth the procedural facts relating to the appointment of the referee and the Order of Reference.

I

¶7 On August 27, 2014, after nearly a decade of successful collaboration between Newtek and Hicks, Newtek terminated Hicks' contract. On September 16, 2014, Newtek brought an action against Hicks in the Circuit Court for

6

Milwaukee County, John J. DiMotto, Judge, alleging breach of contract, tortious interference with contract, breach of fiduciary duty, and misappropriation of confidential information and trade secrets. Newtek demanded a jury trial.

¶8 The contract included restrictive covenants. The enforceability of these restrictive covenants is central to the underlying dispute. Hicks filed an answer to the complaint, asserting affirmative defenses and counterclaims and seeking nearly $17 million in damages.

¶9 Because the contract provided for injunctive relief, Newtek promptly sought and received an ex parte temporary restraining order from a duty judge just a few days after filing the complaint. The circuit court (Judge DiMotto) affirmed and reaffirmed the temporary restraining order.

¶10 Over the course of the next several months, the parties began extensive discovery. The parties periodically appeared before the circuit court for scheduling conferences and motion hearings.

¶11 In early 2015, Newtek moved to amend the scheduling order to extend the deadlines for naming experts and providing expert reports. Hicks opposed the extension and filed a motion to compel discovery.

¶12 On February 17, 2015, the circuit court held a hearing on Newtek's motion to amend the scheduling order and decided to appoint a referee to the case. At the hearing, Newtek described the case as a "classic big case" with numerous issues and

production of a substantial number of documents in discovery (50,000 thus far):

> [W]hen we appeared before you in November [everyone] was overly optimistic in terms of what could be accomplished. In particular, overly optimistic in where we slotted the expert disclosures in relation to what . . . this litigation has spawned by way of discovery. We're approaching just on our side nearly 40,000 pages of production, about which the other side is still complaining. The other side has produced . . . in the order of 10,000 [pages], about which we're complaining. . . .
>
> We have the classic big case with lots of issues now. We have more than one case in the sense that we have filed a complaint with numerous causes of action but there is a counter complaint. The counterclaims have been filed by the other side, and discovery is occurring with regard to both of those pleadings. . . .
>
> And so we are doing our best to produce without coming to the court . . . . And it has been a production that has gotten to the point of something like a thousand pages . . . that we are producing per day. That's what the average is since this began.

¶13 The circuit court granted Newtek's request for extension in part and also gave Hicks an extension. The circuit court expressed frustration with the already cumbersome discovery, especially the attorneys' conduct, stating:

> Well you know, the one thing that I put a real high value on are [sic] attorneys being reasonable. Quite frankly, it seems to me that both sides here are not being——at least they're not being reasonable . . . .

¶14 Explaining that the circuit court had "some 450 cases" on its docket, the circuit court stated that it was "not going to expend a lot of time dealing with [the parties'] discovery bickering." Accordingly, the circuit court appointed retired

8

Judge Michael Skwierawski as the referee under Wis. Stat. § (Rule) 805.06, explaining the appointment as follows:

> I am going to be appointing . . . retired Judge Michael Skwierawski as the Special Master in this case under 805.06. . . . [Y]ou'll have to deal with him with respect to <u>discovery disputes, etcetera</u>, because I'm not going to waste precious court time that I can give to other cases to be your personal slave to your discovery disputes. So I just want you to know that. <u>So the more reasonable you are with each other, the less likely you're going to need to pay the fees of retired Judge Michael Skwierawski. And he doesn't come cheap when it comes to being a Special Master.</u> So I encourage you to be cooperative in your discovery, help each other out, get this case to mediation sooner than later. (Emphasis added.)

¶15 Although the circuit court uses the phrase "Special Master," this opinion uses the word "referee," adhering to Wis. Stat. § (Rule) 805.06, which uses the term "referee." The term "master" had such a pejorative connotation in 1848 at the time of statehood, as we shall explain later,[5] that the word "referee" has been used in Wisconsin.[6]

¶16 The circuit court explained that it would call retired Judge Michael Skwierawski to ask him if he would accept the appointment. The circuit court also explained that the referee would draft the Order Appointing Special Master/Referee (Order of Reference or Order)[7] because the referee has a list of things

---

[5] <u>See</u> ¶65, <u>infra</u>.

[6] Federal Rule of Civil Procedure 53 uses the word "master."

[7] The court order appointing a referee and describing the referee's powers is called a "reference" or an "order of reference." <u>Ehlinger v. Hauser</u>, 2010 WI 54, ¶77, 325 Wis. 2d 287, 785 N.W.2d 328; Wis. Stat. § (Rule) 805.06(5)(a).

that he requires.  Neither party objected to the circuit court's decision to appoint the referee.

¶17 The circuit court directed Newtek to draft a proposed order memorializing the outcome of the February 17 hearing, including the referee's appointment.  Newtek's counsel contacted the referee on February 18 to confirm his availability before drafting this order.  The referee said he was available and that he had already submitted a proposed Order of Reference to the circuit court; the referee directed counsel from each side to submit any objections to the proposed order.

¶18 Newtek told the referee that it was reviewing the Order of Reference and would submit objections, if any, as soon as possible.  Less than a day after counsel received the Order, the circuit court informed the parties that it had entered the Order.  Thus, neither side was able to submit any objections before the Order of Reference was signed.

¶19 The Order of Reference pertained to more than discovery issues.  In addition to authority to manage discovery, the Order granted authority over nearly all aspects of the case and provided for limited review by the circuit court.  The reference provided, inter alia:

- All motions, whether discovery or dispositive, were to be heard and decided initially by the referee.
- The referee's written rulings would be adopted and entered as the rulings of the court, automatically and without hearing, unless a party filed an exception within five days.

10

- The referee could certify matters to the circuit court, and the circuit court could refuse to decide these matters.

- The circuit court retained the power to modify or set aside a referee's ruling, but the circuit court could only do so if the ruling were based on an erroneous exercise of discretion.

- The parties were to compensate the referee at $450 per hour plus reasonable and necessary expenses. The parties were to divide the cost of the referee equally. (The total cost of the referee thus far has been about $45,000.)

¶20 Three relevant provisions of the Order of Reference are as follows (emphasis added):

4. The [referee] shall have the full authority of the Court in coordinating and establishing all pretrial procedures. The [referee] shall also have the full authority of the Court to hear and decide, subject to Court review as set forth below, any other matters assigned to him by the Court. All motions filed, whether discovery or dispositive, shall initially be heard and decided by the [Referee], subject to review processes available as described below.[8]

7. If the [referee] is of the opinion that a specific issue presented by the parties is of such fundamental importance to the progress or outcome of the case that effective case management would not be furthered by having the [referee] render a decision in

---

[8] Requiring all motions to be filed with the referee was not part of the referee's usual form order; this provision was added at the circuit court's request.

11

the first instance, the [Referee] may at his discretion certify that issue to the Court. As the final arbiter of case management, the Court may, but need not, accept the certification. . . .

8. Exceptions to any decisions made by the [referee] may be taken to this Court and must be filed with the Court within five (5) business days of the issuance of the decision. Review by the Court shall be based on the materials and record before the [referee]. No additional filings will be permitted unless good cause and exceptional circumstances are demonstrated by the requesting Party. The Court has full authority to modify or set aside the ruling of the [referee] but will do so only if the ruling is based on an erroneous exercise of discretion. Unless an exception is taken, any ruling by the [referee] shall automatically and without hearing be adopted and entered as a ruling of the Court within five (5) business days of submission by the [referee] to the Court and parties. All decisions made by the [referee] shall be appealable after the final disposition of this case, to the full extent as if made by this Court. A party need not take exception to a decision by the [referee] in order to preserve the issue for appeal, either on an interlocutory basis or as an appeal of a final order.

¶21 A copy of the complete order appointing the referee is attached as Attachment A.

¶22 Shortly after the referee's appointment, Hicks moved to vacate the temporary injunction previously issued by the circuit court. As counsel for both parties and the referee were e-mailing back and forth about this motion and scheduling issues, the circuit court (copied on the e-mail chain by the referee) told the referee to handle this motion and any others that would arise.

¶23 The circuit court explained to the referee: "I appointed you to serve as [referee] because I anticipated extensive motion practice and discovery issues/disputes that

12

would need [to be] addressed more quickly than I could do with my 400+ case calendar.  I would like you to resolve these, and all, pretrial motions/discovery issues."

¶24 The parties briefed the issue of vacating the temporary injunction; the referee heard oral argument and issued a written order that granted Hicks' request to vacate the temporary injunction.  Newtek subsequently filed an exception to this decision with the circuit court; the circuit court affirmed the referee's decision.

¶25 After vacating the temporary injunction, the referee ruled on more than 15 discovery motions and a few motions for sanctions (related to discovery conduct) over the course of several months.  Newtek objected to several of these orders, all of which the circuit court affirmed without a hearing.

¶26 In 2015, the referee was asked to decide multiple dispositive motions.  In July 2015, Hicks filed two motions for summary judgment; in October 2015, Newtek filed its own motion for summary judgment.  These motions for summary judgment primarily involved the enforceability of the restrictive covenants and claims or discovery issues related thereto.  Hicks also sought a motion in limine barring Newtek from introducing evidence at trial relating to the restrictive covenants.

¶27 Both parties submitted briefs and evidentiary materials on these motions and participated in a hearing before the referee.  The referee recommended partially granting each side's motion for summary judgment and granting Hicks' motion in limine.  The referee recommended, inter alia, that summary

13

judgment be granted to Newtek on certain of Hicks' counterclaims and found that some restrictive covenants upon which Newtek relied were unreasonable, invalid, and unenforceable under Wis. Stat. § 103.465.

¶28 Newtek filed exceptions to these rulings, requesting leave to submit additional briefing or evidence to the circuit court regarding the referee's decisions. Newtek also asked the circuit court to review the referee's orders de novo (rather than under the Order's prescribed "erroneous exercise of discretion" standard of review) because the "magnitude of errors that have plagued this case, if uncorrected, will necessitate an interlocutory appeal."

¶29 Newtek also declared that "[a]s the parties were never afforded an opportunity to object to the scope and terms of the [referee's] appointment, Newtek will also seek to brief the issue of the appointment of the [referee]."

¶30 The circuit court agreed to review the referee's recommendations on the dispositive issues de novo. In regard to Newtek's other requests——to brief the dispositive issues further, submit additional evidence, and brief the issue of the appointment of the referee——the record is silent. Newtek claims that the circuit court denied these requests at an off-the-record status conference in chambers on January 12, 2016.

¶31 On January 21, 2016, the circuit court issued a lengthy order on the parties' cross-motions for summary judgment and on the exceptions taken to the referee's recommendations. The circuit court agreed with most of the referee's

14

recommendations, granting partial summary judgment to each party and limiting the evidence that Newtek could present at trial to prove its claims.

¶32 Although the circuit court's opinion states that it is based on a de novo review of the record and the parties' submissions, Newtek contends that the circuit court did not actually conduct a de novo review.[9]

¶33 On February 4, 2016, Newtek filed a petition with the court of appeals for leave to appeal from the circuit court's order granting partial summary judgment and limiting evidence at trial.

¶34 In its February 2016 petition for leave to appeal, Newtek detailed problems relating to the referee's appointment, role, and lack of control by the circuit court, but it did not request the court of appeals to vacate the referee's appointment, to consider any constitutional issues, or to determine the referee's authority to find facts, make legal conclusions, and issue orders. Newtek's major argument focused on substantive legal issues; Newtek argued that the circuit court and the referee ignored the record and misstated the law.

¶35 On April 6, 2016, the court of appeals denied the petition for leave to appeal on a usually stated ground that the "petition fails to satisfy the criteria for permissive appeal. See Wis. Stat. § 808.03(2) (2013-14) . . . ." Newtek did not

---

[9] Brief of Petitioner at 24.

15

petition this court for review of the court of appeals' order denying the petition for leave to appeal. See Wis. Stat. § (Rule) 809.62. Nor did Newtek petition the court of appeals for a supervisory writ under § (Rule) 809.51 to vacate the circuit court's order appointing the referee. Instead, Newtek sought a supervisory writ in this court on May 6, 2016.

II

¶36 The first issue presented is whether Newtek's petition for a supervisory writ asking the court to vacate a circuit court order appointing retired Judge Michael Skwierawski as the referee is properly before this court. We conclude that the petition is not properly before this court, but we exercise our superintending authority to vacate the Order of Reference.

¶37 The Wisconsin Constitution grants three separate powers to this court: appellate and original jurisdiction; the power to issue all writs necessary in aid of its jurisdiction; and superintending authority over all courts. Wis. Const. art. VII, § 3.[10]

---

[10] State ex rel. Reynolds v. County Court, 11 Wis. 2d 560, 564, 105 N.W.2d 876 (1960).

The original Article VII, Section 3 of the 1848 Wisconsin Constitution provides as follows:

The supreme court, except in cases otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state; but in no case removed to the supreme court shall a trial by jury be allowed. The supreme court shall have a general superintending control over all inferior courts; it shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto,

(continued)

16

¶38  We begin with the court's power to issue supervisory writs.  Wisconsin Stat. §§ (Rules) 809.71 and 809.51 govern writ practice.

¶39  Wisconsin Stat. § (Rule) 809.71 authorizes a person to request the supreme court to exercise its supervisory jurisdiction over a court and the judge presiding therein by filing a petition in accordance with § (Rule) 809.51.  Section (Rule) 809.51 governs the contents of the petition and supporting memorandum and provides that the court may grant or deny the petition or order such additional proceedings as it considers appropriate.  According to § (Rule) 809.71, a person seeking a writ in the supreme court shall first file a petition

---

certiorari, and other original and remedial writs, and to hear and determine the same.

In April 1977, Article VII, Section 3 of the Wisconsin Constitution was revised to read as follows:

(1) The supreme court shall have superintending and administrative authority over all courts.

(2) The supreme court has appellate jurisdiction over all courts and may hear original actions and proceedings. The supreme court may issue all writs necessary in aid of its jurisdiction.

(3) The supreme court may review judgments and orders of the court of appeals, may remove cases from the court of appeals and may accept cases on certification by the court of appeals.

for a supervisory writ in the court of appeals unless it is impractical to do so.[11]

¶40 Wisconsin Stat. § (Rule) 809.71, governing supervisory writs in this court, provides as follows:

> 809.71 Rule (Supervisory writ). A person may request the supreme court to exercise its supervisory jurisdiction over a court and the judge presiding therein or other person or body by filing a petition in accordance with s. 809.51. A person seeking a supervisory writ from the supreme court shall first file a petition for a supervisory writ in the court of appeals under s. 809.51 unless it is impractical to seek the writ in the court of appeals. A petition in the supreme court shall show why it was impractical to seek the writ in the court of appeals or, if a petition had been filed in the court of appeals, the disposition made and reasons given by the court of appeals.

¶41 Newtek did not first file a petition for a supervisory writ in the court of appeals as required by Wis. Stat. § (Rule) 809.71. Newtek claims that it was impractical to seek the writ in the court of appeals because the court of appeals denied its petition for leave to file an appeal, and that its petition for leave to file an appeal sought the assistance of the court of appeals for reasons similar to those offered in its petition in this court for a supervisory writ.

---

[11] See also Judicial Council Committee's Note, 1981, Wis. Stat. § (Rule) 809.71 ("The supreme court will not exercise its supervisory jurisdiction where there is an adequate alternative remedy. Unless the court of appeals is itself the object of the supervisory writ, usually there is an adequate alternative remedy of applying to the court of appeals under Rule 809.51 for the supervisory writ.").

¶42 Newtek's interlocutory appeal to the court of appeals primarily focused on the substantive merits of the summary judgment and on limiting evidence at trial, and only tangentially raised objections to the Order of Reference. The court of appeals gave no specific explanation other than its usually stated ground that the "petition fails to satisfy the criteria for permissive appeal. See Wis. Stat. § 808.03(2) (2013-14) . . . ." We therefore do not know why the court of appeals denied the petition for leave to appeal.

¶43 The grounds for the court of appeals to grant a petition for leave to appeal[12] are not necessarily the same as the grounds for granting a supervisory writ.[13] On this record,

---

[12] The grounds for the court of appeals to grant leave to appeal are set forth in Wis. Stat. § 808.03(2) as follows:

(2) APPEALS BY PERMISSION. A judgment or order not appealable as a matter of right under sub. (1) may be appealed to the court of appeals in advance of a final judgment or order upon leave granted by the court if it determines that an appeal will:

(a) Materially advance the termination of the litigation or clarify further proceedings in the litigation;

(b) Protect the petitioner from substantial or irreparable injury; or

(c) Clarify an issue of general importance in the administration of justice.

[13] A party seeking a supervisory writ must demonstrate that:

1. An appeal is an inadequate remedy;

2. Grave hardship or irreparable harm will result;

(continued)

19

we cannot determine the ground on which the court of appeals denied Newtek's petition for leave to appeal or whether it was impractical for Newtek to seek a supervisory writ in the court of appeals that focused on the validity of the Order of Reference.

¶44 We decline to extend our supervisory writ jurisprudence and cast doubt on the continued vitality of the "impracticality" requirement of Wis. Stat. § (Rule) 809.71. We therefore decline to hold that Newtek has shown that it was impractical for it to seek a supervisory writ in the court of appeals and that Newtek's petition for a supervisory writ complies with Wis. Stat. § (Rule) 809.71.

¶45 In the alternative, Newtek asks that we use our constitutional power of "superintending authority" over all Wisconsin courts, Wis. Const. art. VII, § 3(1), to review the validity of the Order of Reference.

¶46 We can and should decide the issue of the validity of the Order of Reference using our constitutional superintending authority under the circumstances of this case. The validity of the Order of Reference is an important issue for Wisconsin courts and the public.

---

3. The duty of the trial court is plain and it must have acted or intended to act in violation of that duty; and

4. The request for relief is made promptly and speedily.

20

¶47 The superintending authority provision of the Wisconsin Constitution endows this court "with a separate and independent jurisdiction, which enables and requires it in a proper case to control the course of ordinary litigation in . . . inferior courts . . . ."[14] The nature and scope of the superintending authority of this court has been before this court numerous times since at least 1853.[15] The scope of this authority is "as broad and as flexible as necessary to insure the due administration of justice in the courts of this state."[16] "In exercising this power of superintending control, this court is not restricted to the use of common-law writs and is limited

---

See State ex rel. Three Unnamed Petitioners v. Peterson, 2015 WI 103, ¶26, 365 Wis. 2d 351, 875 N.W.2d 49; State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, ¶¶100-132, 363 Wis. 2d 1, 866 N.W.2d 165.

[14] State ex rel. Fourth Nat'l Bank of Philadelphia v. Johnson, 103 Wis. 591, 613, 79 N.W. 1081 (1899)).

[15] See, e.g., Attorney General v. Blossom, 1 Wis. 317 (1853).

[16] Madison Teachers, Inc. v. Walker, 2013 WI 91, ¶16, 351 Wis. 2d 237, 839 N.W.2d 388 (quoting In re Kading, 70 Wis. 2d 508, 520, 235 N.W.2d 409 (1975)).

only by the necessities of justice."[17]   But the superintending authority of the court is not to be used lightly.[18]

¶48   The question of exercising the constitutional grant of superintending authority is one of judicial policy rather than one relating to the power of this court.   To convince this court to exercise this constitutional grant of power, a party must establish that an appeal from a final judgment is inadequate and that grave hardship will follow a refusal to exercise the power.[19]

¶49   Whether an erroneously ordered compulsory reference creates such a hardship is judged on the facts of the case.   The following circumstances compel the exercise of our superintending authority over circuit courts in the instant case:

---

[17] State ex rel. Reynolds v. County Court, 11 Wis. 2d 560, 565, 105 N.W.2d 876 (1960).   See also State v. Ernst, 2005 WI 107, ¶19, 283 Wis. 2d 300, 699 N.W.2d 92; Arneson v. Jezwinski, 206 Wis. 2d 217, 225, 556 N.W.2d 721 (1996).

[18] See State ex rel. Hustisford Light, Power, & Mfg. Co v. Grimm, 208 Wis. 366, 370, 371, 243 N.W. 763 (1932) (citing State ex rel. Tewalt v. Pollard, 112 Wis. 232, 87 N.W. 1107 (1901); State ex rel. City of Milwaukee v. Ludwig, 106 Wis. 226, 82 N.W. 158 (1900); State ex rel. Fourth Nat'l Bank of Philadelphia v. Johnson, 105 Wis. 164, 83 N.W. 320 (1899); State ex rel. Meggett v. O'Neill, 104 Wis. 227, 80 N.W. 447 (1899); State ex rel. v. Nat'l Bank of Philadelphia v. Johnson, 103 Wis. 591, 612, 79 N.W. 1081 (1899)).

[19] Hustisford, 208 Wis. at 370.

22

- The Order of Reference broadly delegates to the referee the authority to decide all motions, whether discovery or dispositive.

- The Order of Reference is apparently used with some frequency in Milwaukee County, and the appointment of referees may become an increasingly common practice in the circuit courts.

- This court has not recently reviewed the permissible scope of references under Wisconsin law.

- The case presents significant state constitutional issues having statewide importance relating to core functions of the circuit courts and access to the courts.

- If this court does not review the validity of the Order of Reference at this time, the parties will endure great hardship; they will have to submit to a long and expensive reference and then trial before being afforded the opportunity to seek relief on appeal. And after trial and appeal if the reference is held invalid, the parties will again be at the discovery stage.[20]

---

[20] Hustisford, 208 Wis. at 371-72 (holding that a postjudgment appeal regarding a compulsory reference justifies this court's exercise of supervisory power and issuance of a writ of mandamus); Killingstad v. Meigs, 147 Wis. 511, 517, 133 N.W. 632 (1911) (holding that an unauthorized compulsory reference is a material and reversible error).

23

¶50 We therefore use our constitutional superintending authority to declare the rights of the parties in the instant case.

III

¶51 Hicks argues that Newtek has sat on its rights too long by participating in proceedings with the referee for about a year without objection to the Order of Reference and then objecting only after it received an adverse summary judgment ruling. The argument is that Newtek has waived or forfeited its right to challenge the Order, is estopped from challenging the Order, or has impliedly consented to the Order.[21] We now turn to whether this court should address the validity of the Order of Reference regardless of whether Newtek has not promptly challenged the Order.

¶52 Hicks raises an important point: Litigants should object to an Order of Reference promptly. Otherwise, litigation will become more protracted and costly. "If a party wishes to contest the reference, it should move the court to revoke the reference." Ehlinger v. Hauser, 2010 WI 54, ¶77, 325 Wis. 2d 287, 785 N.W.2d 328.

¶53 Newtek offers reasons for its delay in objecting to the reference. We need not decide, however, whether Newtek was justified in failing to object more promptly. Rules of

---

[21] For a discussion of the concepts of waiver and forfeiture, see State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612.

24

forfeiture and waiver are rules of judicial administration, and thus, a reviewing court may disregard a waiver or forfeiture and address the merits of an unpreserved issue in an appropriate case.[22]

¶54 Hicks urges that Newtek's participation in proceedings before the referee and Newtek's failure to seek relief from the Order of Reference promptly were tantamount to Newtek's impliedly consenting to the reference and estop Newtek. Newtek responds that it is not estopped, that affirmative consent——which it never gave——is necessary to bind a party to non-judicial dispute resolution (such as arbitration), and that implied consent cannot provide a referee with authority the law prohibits a referee from having, citing AT&T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986) (explaining that arbitration requires affirmative agreement); and Jovine v. FHP, Inc., 64 Cal. App. 4th 1506, 1531, 76 Cal. Rptr. 2d 322 (1998) (holding that a party must explicitly consent to a referee's making substantive rulings). See also In re L.J., 157 Cal. Rptr. 3d 197, 207 (Cal. Ct. App. 2013) (explaining that unauthorized referee orders are void and consent is irrelevant).

¶55 When the constitutional limitations of Article VII, Section 2 of the Wisconsin Constitution on reference are at

---

[22] See, e.g., State v. McKellips, 2016 WI 51, ¶47, 369 Wis. 2d 437, 881 N.W.2d 258; Vill. of Trempealeau v. Mikrut, 2004 WI 79, ¶17, 273 Wis. 2d 76, 681 N.W.2d 190; Bradley v. State, 36 Wis. 2d 345, 359–359a, 153 N.W.2d 38 (1967).

issue, notions of waiver, forfeiture, estoppel, and consent should not be dispositive. The constitutional limitations on reference serve institutional and public interests that should be protected.[23] Because the issue presented is significant to the functioning of the Wisconsin court system and to the public, and because an important constitutional issue is presented, we do not treat Newtek's failure to object more promptly as a waiver, forfeiture, or estoppel to object to the validity of the reference, or as implied consent to the reference. Rather, we address the merits of the issues presented under our constitutional superintending authority.

IV

¶56 We turn now to decide whether the circuit court's Order of Reference contravenes Article VII, Section 2 of the Wisconsin Constitution, which vests the "judicial power" of this state in a unified court system as follows:

> Art. VII. Sec. 2. The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature under section 14.

¶57 The phrase "judicial power" is not defined in the Wisconsin Constitution. Nor does the Wisconsin Constitution vest "judicial power" in a referee. Newtek contends that the

---

[23] Cf. Commodities Futures Trading Comm'n v. Schor, 478 U.S. 833, 848-49 (1986) (discussing Article III of the United States Constitution).

Order of Reference in the instant case enables the referee to impermissibly wield constitutional "judicial power."

¶58 Constitutional judicial power was discussed in State v. Williams, 2012 WI 59, 341 Wis. 2d 191, 814 N.W.2d 460. In Williams, we addressed whether a circuit court commissioner's issuance of a search warrant was an exercise of the judicial power vested in the unified court system by Article VII, Section 2 of the Wisconsin Constitution. We described the constitutional "judicial power" as the "ultimate adjudicative authority of courts to finally decide rights and responsibilities as between individuals." Williams, 341 Wis. 2d 191, ¶36. Recognizing, however, that the Wisconsin Constitution contemplated unelected officers (like court commissioners) exercising certain, limited judicial functions, we concluded that a court commissioner's issuing a search warrant was not an impermissible exercise of constitutional "judicial power."

¶59 No party in the instant case questions the power of a circuit court to appoint a referee.[24] Used properly, a circuit court's power to appoint and assign functions to a referee is not unconstitutional and allows circuit courts to provide more efficient dispute resolution to litigants.

---

[24] Although there is no similar Wisconsin precedent, the United States Supreme Court has declared that federal courts have an inherent authority to appoint masters "to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause." Ex parte Peterson, 253 U.S. 300, 312 (1920).

27

¶60 Indeed, the power of circuit courts to appoint referees to assist courts with limited functions can be traced to Wisconsin's territorial days. This historical role of referees informs our decision.

¶61 Wisconsin's territorial statutes recognized the use of special masters in any cause requiring the examination of a "long account."[25] "Actions at law which involved the examination of a long account might be compulsorily referred ever since the constitution was adopted, and for a long time before."[26]

¶62 After adoption of the Wisconsin Constitution, statutes authorized the appointment of referees to assist trial courts with matters of long account and limited pretrial functions. Actions not within the governing statutes could not be referred to a referee.[27]

---

[25] See Bd. of Supervisors of Dane Cty. v. Dunning, 20 Wis. 221 (*210), 228 (*216) (1866) ("In Wisconsin, a compulsory reference was provided for in actions at law requiring the examination of such accounts, as early as 1839. Stat. 1839, p. 209, § 84.").

The Supreme Court of the Territory of Wisconsin declared that a reference to a panel of referees to examine a long account did not violate the United States Constitution's guarantee of trial by jury. See Rooker v. Norton, 1 Pin. 195 (1842).

[26] Killingstad v. Meigs, 147 Wis. 511, 517, 133 N.W.2d 632 (1911).

[27] Brown v. Runals, 14 Wis. 755, 761 (1861); Killingstad, 147 Wis. at 514-15.

¶63 Shortly after adoption of the Wisconsin Constitution, this court declared that limited use of referees was constitutional because their use dated to pre-constitution days.[28] The state constitution "did not take away this right of reference, but only provided that the right of trial by jury should remain as it was before . . . ."[29]

¶64 Although these early cases recognized that a reference was not a per se violation of the Wisconsin Constitution and that a referee had only the functions conferred by the order of reference,[30] the cases also recognized that appointment of a referee is for the exceptional case,[31] and that the power to refer was not limitless. For example, a referee's report was

---

[28] Dunning, 20 Wis. at 228 (*216).

[29] Dunning, 20 Wis. at 228 (*216); Stilwell v. Kellogg, 14 Wis. 499, (1861).

[30] Best v. Pike, 93 Wis. 408, 414, 67 N.W. 697 (1896); Knips v. Stefan, 50 Wis. 286, 6 N.W. 877, 880 (1880); Stone v. Merrill, 43 Wis. 72 (1877).

[31] Knips v. Stephan, 50 Wis. 286, 290, 6 N.W. 877 (1880) ("The right to have the issues determined by a referee and the court, against the consent of either party, is the exception . . . .").

See also Ehlinger v. Hauser, 2010 WI 54, ¶89, 325 Wis. 2d 287, 785 N.W.2d 328.

not self-executing and required a court order to have the force of law.[32]

¶65 Furthermore, Article VII, Section 19 barred the office of masters in chancery entirely.[33] Historically, masters in chancery in equity cases had their functions balloon as courts referred entire matters to them, and every proceeding before the master carried a fee. This use of masters to decide cases for fees led to substantial abuses that increased the costs of litigation and caused delays. Prohibitive costs and time-consuming delay were viewed as violating a litigant's right to a speedy trial as much as no trial at all. As a result, the 1848 Wisconsin Constitution banned masters in chancery.[34]

---

[32] Fairbanks v. Newton, 46 Wis. 644, 645, 1 N.W. 335 (1879) ("[T]he report of itself entitles neither party to judgment. . . . It is the duty of the circuit court thereupon, before judgment, to hear the parties, and to make an order sustaining or overruling the exceptions, and confirming, setting aside or modifying the report.").

[33] Article VII, Section 19 of the pre-1977 Wisconsin Constitution provided: "The testimony in causes in equity shall be taken in like manner as in cases at law, and the office of master in chancery is hereby prohibited."

This provision was repealed in April 1977 when Wisconsin adopted the unified court system. See 1975 J.R. 13, 1977 J.R. 6.

[34] For discussions of the history of the abuses of masters in chancery in state and federal courts relating to expense and delay, see Simpson v. Canales, 806 S.W.2d 802, 806-08 (Tex. Dt. Ct 1991); Linda J. Silberman, Masters and Magistrates Part II: The American Analogue, 50 N.Y.U. L. Rev. 1297 (1975); Irving R. Kaufman, Masters in the Federal Courts: Rule 53, 58 Colum. L. Rev. 452, 452 n.4 (1958).

¶66 Not all references were (or are) barred by the Wisconsin Constitution. The use of referees serves as a valuable adjunct to the judicial process. As judicial adjuncts, however, referees have to be supervised by the circuit court and their functions restricted. The history of the masters in chancery teaches that we must guard against the unsupervised and unrestricted use of referees.

¶67 The United States Supreme Court and federal courts of appeal have recognized that judges bear primary responsibility for the work of the courts and that a reference that would serve to relieve a court of its primary judicial powers is not permitted under Article III of the United States Constitution.[35]

---

[35] La Buy v. Howes Leather Co., 352 U.S. 249, 256 (1957) (appointment of a master to try a case "amounted to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation."); Ex parte Peterson, 253 U.S. 300, 312 (1920). See also Webster Eisenlohr, Inc. v. Kalodner, 145 F.2d 316 (3d Cir. 1944), cert. denied, 325 U.S. 867 (1945), and federal court of appeals cases cited by 9 James Wm. Moore & Joseph C. Spero, Moore's Federal Practice § 53.03[3], n.13 (3d ed. 2016).

Courts have expressed concern over the appointment of masters to consider dispositive pretrial motions. The Federal Advisory Committee Note to Federal Rule of Civil Procedure 53 states: "At the extreme, a broad delegation of pretrial responsibility as well as a delegation of trial responsibilities can run afoul of Article III [of the United States Constitution]."

(continued)

31

Article III preserves to litigants their interest in an impartial and independent federal adjudication of claims within the judicial power of the United States and serves as a significant part of the constitutional system of checks and balances, preventing legislative transfer of jurisdiction to emasculate the constitutional courts.[36]

¶68 Federal courts have attempted to delineate when a master assists a federal judge versus when a master unconstitutionally displaces a federal judge as adjudicator.

¶69 In La Buy v. Howes Leather Co., 352 U.S. 249 (1957), the Court affirmed the Seventh Circuit's issuance of a writ of mandamus directing the district court to vacate a reference to a special master. The reference essentially transferred the

---

For discussions of the use and limitations of masters in the federal courts, see Margaret G. Farrell, The Function and Legitimacy of Special Masters: Administrative Agencies for the Courts, 2 Widener L. Symp. J. 235 (1997); Irving R. Kaufman, Master in the Federal Courts: Rule 53, 58 Colum. L. Rev. 452 (1958); 9C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure 2601-15 (3d ed. 2008); 9 James Wm. Moore & Joseph C. Spero, Moore's Federal Practice ch. 53 (3d ed. 2016).

For a discussion of Article III courts and the congressional power to create legislative courts, see Erwin Chemerinsky, Federal Jurisdiction ch. 4 (7th ed. 2016).

For discussions of referees in Wisconsin and Wis. Stat. § (Rule) 805.06, see 3A Jay E. Grenig, Wisconsin Practice Series: Civil Procedure § 506.1-.8 (4th ed. 2010); Patricia Graczyk, The New Wisconsin Rules of Civil Procedure Chapters 805-807, 59 Marq. L. Rev. 671, 680-85 (1976).

[36] Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 850 (1986).

entire case, including the trial, to the master. Giving such broad duties to a special master "amounted to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation." La Buy, 352 U.S. at 256. The Court noted that while masters could "aid judges" in the performance of limited duties, they could not be permitted to "displace the court." La Buy, 352 U.S. at 256.

¶70 Although the issue in La Buy was a trial conducted by a special master, the language and reasoning of the opinion have been applied by federal and state courts to the use of special masters or referees at all stages of litigation. These courts have scrutinized appointments of special masters or referees to prevent them from replacing the judge in settings beyond the trial itself.

¶71 When a federal district judge "referred an apparently urgent and contentious civil controversy to a special master, virtually for all purposes," the federal Court of Appeals for the District of Columbia Circuit instructed the district judge to revise the order of reference and "not delegate to the special master [ ] the core function of making dispositive rulings, including findings of fact and conclusions of law on issues of liability."[37] The D.C. Circuit Court of Appeals struck down this broad reference because trial courts "ha[ve] no

---

[37] In re Bituminous Coal Operators' Ass'n, 949 F.2d 1165, 1166 (D.C. Cir. 1991).

discretion to impose on parties against their will 'a surrogate judge,' a substitute from the private bar charged with responsibility for adjudication of the case."[38]

¶72 The concern that a master will effectively replace the trial judge is especially apt when the master decides dispositive motions. "Determining bottom-line legal questions is the responsibility of the court itself."[39]

¶73 In United States v. Microsoft Corp., 147 F.3d 935, 954-955 (D.C. Cir. 1998), the federal Court of Appeals for the District of Columbia Circuit vacated a reference to a special master to determine compliance under a consent decree. The court of appeals rejected the United States' argument that having a special master oversee the implementation of a consent decree is a "well-established tradition." Microsoft Corp., 147 F.3d at 954. Reasoning, instead, that the special master's duties involved interpretation and were "no more 'remedial' than would be those of any total referral of a contract case," the court held that the reference was fatally flawed because it

---

[38] In re Bituminous Coal Operators Ass'n, 949 F.2d at 1168; Stauble v. Warrob, 977 F.2d 690, 695 (1st Cir. 1992) ("Because Rule 53 cannot retreat from what Article III requires, a master cannot supplant the district judge. Determining bottom-line legal questions is the responsibility of the court itself." (citation omitted)).

[39] Stauble v. Warrob, Inc., 977 F.2d 690, 695 (1st Cir. 1992); accord Prudential Ins. Co. v. U.S. Gypsum Co., 991 F.2d 1080, 1084 (3rd Cir. 1993) (explaining that summary judgment and other dispositive motions "must be resolved prior to trial" and "traditionally have been decided by judges").

turned on the "determination of rights . . . ." "[S]pecial masters may not decide dispositive pretrial motions." <u>Microsoft Corp.</u>, 147 F.3d at 954 (citing <u>In re United States</u>, 816 F.2d 1083, 1090 (6th Cir. 1987)).[40]

¶74 Several state courts also have not permitted circuit courts to delegate authority to a non-judge to decide dispositive motions or make legal determinations of rights. <u>See, e.g.</u>, <u>Salt Lake City v. Ohms</u>, 881 P.2d 844, 848 (Utah 1994) (referees cannot "exercise th[e] judge's ultimate judicial power, for such is a nondelegable core judicial function"); <u>Jovine v. FHP, Inc.</u>, 64 Cal. App. 4th 1506, 1509, 1523-24 (1998) (deciding dispositive motions is beyond a referee's authority; the responsibility to decide cannot be delegated without the express consent of the parties; the state constitution governs delegation of judicial power); <u>Russell v. Thompson</u>, 619 P.2d 537, 539 (Nev. 1980) (a general reference by the circuit court of nearly all contested issues, giving the master the authority to decide substantially all issues in the case, as well as to be the fact finder, resulted in "the trial court's function [being] reduced to that of a reviewing court" and "this type of blanket

---

[40] <u>See also</u> <u>Beazer East, Inc. v. Mead Corp.</u>, 412 F.3d 429, 442 (3rd Cir. 2005) (holding that a special master could not perform CERCLA equitable allocation involving "a complex and delicate determination of equities"); <u>Burlington N.R.R. v. Dept. of Rev. of Wash.</u>, 934 F.3d 1064, 1073 (9th Cir. 1991) (district court's wholesale reference of the entire case to a master and rubber stamping of the master's order was abdication of judicial responsibility and violation of Article III of the United States Constitution).

35

delegation approaches an unallowable abdication by a jurist of his constitutional responsibilities and duties;" although the master's report must be confirmed by the court before it is final, the reference is not saved "because the scope of review is so limited.").

¶75 Our court, however, has not decided the outer limits placed by the state constitution on the use of referees.  But the Wisconsin Supreme Court very early declared that referees may share in judicial labor but cannot assume the place of the judge.  "[C]onstitutional judges . . . can take [no power] from the legislature, to subdelegate their judicial functions."[41]

---

[41] In Van Slyke v. Trempealeau Co. Farmers' Mut. Fire Ins. Co., 39 Wis. 390, 392, 396 (1876), the court stated:

It seems too manifest for discussion that, under the constitution, no one can hold a circuit court but a circuit judge. . . . If the statute before us could be upheld, we do not see why one could not which should assume to give to the parties, in all actions, in all courts, power to stipulate the judges off the bench, and private persons into their seats.  Judicial power is one of the attributes of sovereignty, necessarily delegated in its exercise.  The constitution does not leave the delegation loose at the discretion of the legislature.  It delegates the judicial power to constitutional courts, to be held by constitutional judges.  And these constitutional judges take no power from the constitution, can take none from the legislature, to subdelegate their judicial functions.

. . . .

[T]he circuit judge might be likened to the sun . . . and [the referee] to the moon . . . shining with delegated jurisdiction.  But the constitution mars the comparison.  For by the astronomical constitution the sun appears to take power to delegate
(continued)

36

¶76 Because courts cannot delegate their judicial power, the reasoning of the federal and state cases barring courts from delegating core judicial powers—that is, powers to conduct trials, decide dispositive motions, or determine fundamental rights—provides a compelling measuring stick to determine whether the circuit court in the instant case impermissibly delegated judicial power to the referee.

¶77 In the instant case, as we stated previously, the Order of Reference enables the referee to hear and decide all motions filed, whether discovery or dispositive, subject to review under the standard of erroneous exercise of discretion. We conclude that this Order impermissibly delegates constitutional "judicial power" to a referee, prohibiting the circuit court from freely rejecting the referee's rulings and conducting its own independent inquiry and reducing the function of the circuit court to that of a reviewing court.

¶78 Insofar as the Order of Reference in the instant case gave the referee the "full authority of the [circuit] Court to hear and decide" all motions filed, including the authority to

his functions of lighting the world; while the state constitution tolerates no such delegation, and appoints a sun only, without any moon, as luminary of the circuit court, whose "gladsome light of jurisprudence" must be sunshine only, not moonshine. Commissioners, masters, referees, and like judicial subordinates, may share in judicial labor and lighten it; but they cannot change places with the judge on the bench or share in the final judgments of the court.

37

hear and decide motions for injunctive relief, for partial summary judgment, or to limit evidence at trial, counsel for the circuit court and Judge DiMotto makes two arguments in the Order's defense.

¶79 Counsel for the circuit court and Judge DiMotto first argues that the circuit court decided these issues de novo even though the Order of Reference declared that the circuit court would use the erroneous exercise of discretion standard, and that this de novo review of the referee's rulings cured any constitutional defects. Second, counsel argues that this court should postpone ruling on whether the Order of Reference is valid in authorizing the referee to decide these issues until a possible ultimate appeal on the merits.

¶80 We disagree with counsel. Although Newtek contends that the circuit court did not actually exercise de novo review, we need not decide the actual nature of the circuit court's review of the referee's rulings. Our focus in the instant case is on the validity of the Order, not on the conduct of the circuit court.[42]

---

[42] Some federal courts have concluded that an improper delegation of traditional adjudicatory functions is not saved by de novo district court review of the master's ruling. See Microsoft Corp., 147 F.3d at 956 (citing Stauble v. Warrob, Inc., 977 F.2d 690, 698 n.13 (1st Cir. 1992), and In re Bituminous Coal Operators' Ass'n, 949 F.2d 1165, 1168 (D.C. Cir. 1991). See also Beazer East, Inc. v. The Mead Corp., 412 F. 3d 429, 444-45 (3d Cir. 2005).

¶81 We also are not willing to delay consideration of the validity of the Order until after judgment is entered because, as we previously explained, the parties will be irreparably harmed should a decision on the validity of the Order of Reference be delayed until after final judgment and appeal.

¶82 In sum, we conclude that the Order of Reference impermissibly delegated to the referee judicial power constitutionally vested in Wisconsin's unified court system. A referee may share judicial labor, but the Order of Reference may not allow a referee to assume the place of the judge. Accordingly, the Order does not survive Newtek's constitutional challenge.

V

¶83 We examine whether the provision in the circuit court's Order of Reference that the circuit court's review of the referee's "rulings" shall be based only on the referee's "erroneous exercise of discretion" contravenes the constitution[43] and statutes or rules[44] regarding circuit court and appellate court authority and practice.

¶84 The Order of Reference provides for circuit court review of a referee's ruling under the erroneous exercise of discretion standard.

_____

[43] See, e.g., Wis. Const. art. VII, §§ 2, 8.

[44] See, e.g., Wis. Stat. ch. 808.

39

¶85 This standard is not the same standard as a court's de novo review. In a de novo review, the reviewing court reaches whatever decision it would reach independently of the decision of the prior decision maker. In contrast, a circuit court that reviews a referee's ruling under the erroneous exercise of discretion standard is using the standard of review an appellate court ordinarily uses to review certain rulings of a circuit court.

¶86 Under the erroneous exercise of discretion standard, an appellate court may affirm the circuit court's ruling even though the appellate court would not necessarily reach the same decision independently of the prior decision maker. Thus, the Order of Reference gives the appearance of an abdication of the circuit court's responsibility to exercise independent judgment.

¶87 The Order of Reference further gives the appearance of granting appellate authority to the circuit court when the legislature has not granted such appellate authority. Article VII, Section 8 of the Wisconsin Constitution provides that "the circuit court shall have . . . such appellate jurisdiction in the circuit as the legislature may prescribe by law." The legislature has not granted the circuit courts appellate jurisdiction over rulings by referees.

¶88 We therefore conclude that the provision in the circuit court's Order of Reference that the circuit court's review of the referee's "rulings" shall be based on the referee's "erroneous exercise of discretion" contravenes the

constitution, statutes, and rules regarding circuit court and appellate court authority and practice.

VI

¶89 We turn to the question of whether the circuit court's Order of Reference contravenes the parties' right to "obtain justice freely, and without being obliged to purchase it" guaranteed by Article I, Section 9 of the Wisconsin Constitution, or with due process of law, guaranteed by Article I, Section 1 of the Wisconsin Constitution, or with Newtek's right to a jury trial, guaranteed by Article I, Section 5 of the Wisconsin Constitution.[45]

¶90 Newtek argues that the Order of Reference deprived it of its constitutional rights to present its claims and defenses to a court of competent jurisdiction.

¶91 Wisconsin's constitutional framers, taking heed of Article 40 of the Magna Carta,[46] provided in Article I, Section 9 as follows:

---

[45] Newtek asserts that the substantive rulings of the referee regarding its property interests in confidential information and its contractual rights to prevent Hicks from improperly using Newtek's goodwill and proprietary information deprived Newtek of property rights without due process, namely the right to be heard by the circuit court. We need not reach this issue.

[46] Article 40 of the Magna Carta provides: "To none will we sell, to none will we deny, or delay, right or justice".

(continued)

41

> Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws.

Wis. Const. art. I, § 9.

¶92 The guarantee of Article I, Section 9 that "[e]very person is entitled to a certain remedy in the laws" does not mean a remedy that must be accompanied by a certainty of recovery. This provision guarantees to every litigant a day in a court of competent jurisdiction to present claims for judicial relief; the litigant may either win or suffer defeat, according to the case presented.[47]

---

See, e.g., Aicher ex rel. LaBarge v. Wis. Patients Comp. Fund, 2000 WI 98, ¶42, 237 Wis. 2d 99, 121, 613 N.W.2d 849, 862 ("Our decisions trace [art. I, § 9's] origin to Paragraph 40 of the Magna Carta, which states: "To none will we sell, to none will we deny, or delay, right or justice.") (citing Vol. I Wisconsin Statutes 1898, Sanborn and Berryman's Annotations at 9).

[47] New York Life Ins. Co. v. State, 192 Wis. 404, 412, 211 N.W. 288 (1926), error dismissed, 276 U.S. 602 (1928).

¶93 Article I, Section 9 does not bar litigants from having to pay reasonable court costs and fees, including referee fees.[48]

¶94 Neither party argues that the $45,000 fee amounts to a bribe or was unreasonable in amount. Neither party seeks a partial or full refund of the fees paid.

¶95 The circuit court was right when it advised the parties that the referee "doesn't come cheap." It encouraged the parties to consider the cost of the referee in deciding whether to raise issues and in making settlement decisions. A referee's fees increase the costs of litigation and thus may have a chilling effect on litigants. If the expenses are not circumscribed, people with meritorious claims will be

---

[48] For discussions of Article I, Section 9, see, e.g., Aicher v. Wis. Patients Comp. Fund, 2000 WI 98, ¶¶41-47, 237 Wis. 2d 99, 613 N.W.2d 849; Makos v. Wis. Masons Health Care Fund, 211 Wis. 2d 41, 52-54, 59-68, 78-87, 546 N.W.2d 662 (1997); Treiber v. Knoll, 135 Wis. 2d 58, 72-74, 398 N.W.2d 756 (1987); Manitowoc v. Manitowoc & N. Traction Co., 145 Wis. 13, 18, 129 N.W. 925 (1911) (granting relief should not be made dependent on ability to furnish bond); Reistad v. Manz, 11 Wis. 2d 155, 159, 105 N.W.2d 324 (1960), overruled on other grounds by Hansen v. A.H. Robins, Inc., 113 Wis. 2d 550, 335 N.W.2d 578 (1983); Mulder v. Acme-Cleveland Corp., 95 Wis. 2d 173, 189, 290 N.W.2d 276 (1980); Portage Cty. v. Steinpreis, 104 Wis. 2d 466, 476-77, 312 N.W.2d 731 (1981); Christianson v. Pioneer Furniture Co., 101 Wis. 2d 343, 347-48, 77 N.W. 174 (1898); State ex rel. Baker v. Cty. Court of Rock Cty., Branch I, 29 Wis. 2d 1, 12, 138 N.W.2d 162, 168 (1965) (Article I, Section 9 "guarantees that persons will not have to bribe or make arbitrary payments to officials in order to obtain justice.").

43

discouraged from pursuing them in court because they cannot afford to go to court.

¶96 A reference to a referee in effect requires litigants to pay for the court system twice——once through the tax system and a second time by paying fees to a referee for resolution of their suit.

¶97 We need not decide this case on the basis of Article I, Section 9. Nevertheless, we note that appointment of a referee is for the exceptional case; it is not the general rule. Furthermore, as Hicks correctly acknowledged, referee fees may offend constitutional mandates "if they chill advocacy severely enough to 'effectively end the litigation' or impose 'an intolerable burden on a losing litigant,'" citing Peter v. Progressive Corp., 986 P.2d 865, 873 (Alaska 1999). Hicks notes that Newtek has not attempted to demonstrate that the referee's fees in the instant case rise to this level. We therefore do not rest our decision on Article I, Section 9 of the Wisconsin Constitution.

¶98 The costs of litigation can price people out of the constitutionally established state judicial system. Yet justice should be available to all persons regardless of financial means. The Wisconsin Constitution embodies the principle that courts are an essential and integral part of Wisconsin's government, open to the people, and the cost thereof is borne as a public expense.

¶99 Circuit courts must heed the admonitions of the Alaska Supreme Court, which warned of denying litigants the right of

44

access to courts and due process by appointment of referees as follows:

> More fundamentally, all potential litigants——not just those who are indigent——have a constitutional right in Alaska of meaningful access to the justice system. Prohibitively high master's fees could potentially jeopardize such access. . . . Even if an imposition of costs or fees is valid on its face, it may offend due process because it operates to foreclose a particular party's opportunity to be heard. We believe the ultimate test . . . is whether the [cost] is so great that it imposes an intolerable burden on a losing litigant which, in effect, denies the litigant's right of access to the courts.

Peter v. Progressive Corp., 986 P.2d 865, 872-73 (Alaska 1999) (internal quotation marks and citations omitted). The California court of appeals similarly stated:

> Allowing trial courts routinely to shift their responsibilities to private judges unfairly requires the litigants, who are already paying taxes to fund the operation of the courts, to also bear the very substantial cost of private judges . . . . [S]uch a burden ultimately could discourage . . . meritorious claims . . . .

Jovine v. FHP, Inc., 64 Cal. App. 4th 1506, 1531 (1998).

¶100 In addition to raising Article I, Section 9 concerns and access to justice concerns, Newtek also raises due process issues. Basic to due process is procedural fairness——notice, the opportunity to be heard, and the accurate and fair adjudication of disputes. Delay and expense may deprive litigants of the fair adjudication of their disputes guaranteed by due process.

¶101 Newtek asserts that the substantive rulings of the referee regarding its property interests in confidential

45

information and its contractual rights to prevent Hicks from improperly using Newtek's good will and proprietary information deprived Newtek of property rights without due process, that is, the right to be heard by the circuit court.

¶102 We need not and do not decide the instant case on the due process clause of Article I, Section 1. It is important, however, to take note of the court's statement in Piper v. Popp, 167 Wis. 2d 633, 644, 482 N.W.2d 353 (1992), describing the constitutional creation of the court system and due process as ensuring access to the courts as follows:

> [W]e begin with the axiom that before the state may deprive an individual of life, liberty or property, the state must accord the individual a meaningful opportunity to be heard. In other words, litigants must be given their day in court. Access to the courts is an essential ingredient of the constitutional guarantee of due process. Whatever the precise status of the right of access to the courts, due process is satisfied "if the procedures provide an opportunity to be heard at a meaningful time and in a meaningful matter."[49]

¶103 Finally, Newtek asserts, inter alia, that the Order contravenes Newtek's constitutional right to a trial by jury by

---

[49] Piper v. Popp, 167 Wis. 2d 633, 644, 482 N.W.2d 353 (1992) (footnote omitted) (citing State ex rel. Strykowski v. Wilkie, 81 Wis. 2d 491, 512, 261 N.W.2d 434 (1987) (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976))). See also Penterman v. Wis. Elec. Power Co., 211 Wis. 2d 458, ¶25, 565 N.W.2d 521 (1997) (the right of access to the courts is secured by the First and Fourteenth Amendments and "exists where the claim has a 'reasonable basis in fact or law'"; "Judicial access must be 'adequate, effective and meaningful'" (quoted sources omitted).).

authorizing the referee to make binding determinations of fact, citing In re Peterson, 253 U.S. 300, 310-11 (1920).[50] In view of our decision that the Order of Reference contravenes Article VII, Section 2 of the Wisconsin Constitution, which vests judicial power in the unified court system, we need not and do not reach the issue of whether the Order comports with or contravenes the right to jury trial guaranteed by Article I, Section 5.[51]

VII

¶104 The last two issues we must address are whether any orders of the referee survive and whether we should grant Newtek's request that we direct that a new judge be assigned on remand.

¶105 Certain discovery orders survive. Insofar as the Order of Reference in the instant case authorized the referee to supervise pretrial discovery disputes, the Order did not contravene the Wisconsin Constitution's vesting of judicial power in a unified court system. Discovery issues are often

---

[50] The court held in In re Peterson, 253 U.S. 300, 310-11 (1920), that the appointment of an auditor by the federal judge to make and file a report with a view to simplifying the issues for the jury but not to finally determine any of the issues in the action was not an unconstitutional interference with the jury's determination of fact; the auditor's report was to be admitted at the jury trial as evidence of the facts and findings embodied therein.

[51] We note that the 2003 revised version of Federal Rule of Civil Procedure 53 permits appointment of a trial master in an action to be tried by jury only if the parties consent.

referred to a master in federal courts. 9C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2602.1 (3d ed. 2008). Indeed, masters have been particularly helpful for overseeing discovery in complex federal cases. 9 James Wm. Moore & Joseph C. Spero, Moore's Federal Practice § 53.10[3][c][ii] (3d ed. 2016).

¶106 Accordingly, if neither party raised an objection to a referee's ruling or order on discovery, that ruling or order remains in full force and effect. If, however, either party raised an objection to a referee's ruling or order on discovery (whether or not reviewed by the circuit court), that ruling or order is vacated.

¶107 Because the Order of Reference impermissibly authorized the referee to rule on dispositive motions, any such referee rulings and the circuit court's orders adopting the referee's recommended rulings on dispositive motions, such as the parties' motions for summary judgment, are vacated.

¶108 Finally, Newtek requests that we direct that a new judge be assigned to the matter on remand. Counsel for the circuit court objects, observing that Wis. Stat. § 801.58(7) permits a party to request substitution of a judge, within 20 days after the remittitur is filed in the circuit court, "[i]f upon an appeal from a judgment or upon a writ of error the appellate court . . . reverses or modifies the judgment or order . . . ."

¶109 True, the statute limits substitution to appeals and writs of error, and a petition for a supervisory writ is neither

48

an appeal nor a writ of error. But, as counsel for the circuit court forthrightly explains, this court has stated that Wis. Stat. § 801.58(7) "'creates an unqualified right to substitution when further trial court proceedings are necessary after remand from an appellate court.'" State ex rel. J.H. Findorff v. Circuit Court for Milwaukee County, 2000 WI 30, ¶13, 233 Wis. 2d 428, 608 N.W.2d 679 (quoting State ex rel. Oman v. Hunkins, 120 Wis. 2d 86, 91, 352 N.W.2d 220 (Ct. App. 1984)).

¶110 Because we reverse orders of the circuit court and remand this matter to the circuit court for further proceedings, and this matter seems to fall within the reach of Wis. Stat. § 801.58(7), we permit either party to seek a substitution of judge pursuant to the procedures set forth in Wis. Stat. § 801.58(1) and (7). Because there is no record in this court in the instant case to be remitted, the 20-day period provided in Wis. Stat. § 801.58(7) should be triggered by this court's transmittal of its judgment and opinion to the circuit court. See Wis. Stat. § (Rule) 809.26(2).

¶111 For the reasons set forth, we conclude as follows:

1. Newtek's petition for a supervisory writ does not meet the requirements set forth in Wis. Stat. § (Rule) 809.71. The petition was not first filed in the court of appeals and Newtek has failed to show that it was impractical to file the petition in the court of appeals. We do, however, exercise our constitutional superintending authority under Article VII, Section 3(2) of the Wisconsin Constitution to

49

determine the validity of the Order of Reference. A declaration of rights is an appropriate vehicle for an exercise of the superintending authority over circuit courts constitutionally granted to this court.[52]

2. Regardless of whether Newtek has waived or forfeited its right to challenge the Order of Reference, is estopped from challenging the Order, or has impliedly consented to the reference, this court may resolve the issue of the validity of the Order of Reference under its constitutional superintending authority.

3. The Order of Reference impermissibly delegated to the referee judicial power constitutionally vested in Wisconsin's unified court system. Accordingly, the Order does not survive Newtek's constitutional challenge.

4. The circuit court's Order of Reference, including the provision that the circuit court's review of the referee's "rulings" shall be based only on the referee's "erroneous exercise of discretion," contravenes the constitution, statutes, and rules regarding circuit court and appellate court authority and practice. It infringes on the legislature's authority to define a circuit court's appellate jurisdiction.

---

[52] State ex rel. Memmel v. Mundy, 75 Wis. 2d 276, 281, 249 N.W.2d 573 (1977).

5. We do not decide the instant case on the basis of Article I, Section 9 of the Wisconsin Constitution, the due process clause of Article I, Section 1 of the Wisconsin Constitution, or the right to jury trial of Article I, Section 5 of the Wisconsin Constitution, but we note that reference to a referee is the exception, not the rule; that there are constitutional limits on the powers of a referee; and that a reference can jeopardize a litigant's access to the justice system, due process, and right to a jury trial. The Wisconsin Constitution requires the state to provide a judicial system for the resolution of disputes. Access to state courts for conflict resolution is thus implicit in the state constitution. We express our concern that the use of referees increases the costs of litigation and may cause delay and, as a practical matter, may deprive litigants of access to the courts.

6. To the extent the parties have agreed to abide by an order or ruling of the referee relating to discovery, that ruling or order shall stand. To the extent either party has objected to an order or ruling of the referee relating to discovery, that ruling or order shall be vacated. Any ruling or order of the referee on a dispositive motion is vacated. Either party may request substitution of the judge pursuant to Wis. Stat. § 801.58(1) and (7).

51

*By the Court.*—The petition for supervisory writ is denied. Rights declared.

ATTACHMENT A

STATE OF WISCONSIN        CIRCUIT COURT        MILWAUKEE COUNTY

UNIVERSAL PROCESSING SERVICES OF
WISCONSIN, LLC,

        Plaintiff,

        v.                      Case No.: 14CV7986

SAMUEL B. HICKS and
MERCHANT CARD SERVICES, INC.,

        Defendants.



FILED

41   FEB 1 9 2015   41

JOHN BARRETT
Clerk of Circuit Court

ORDER APPOINTING SPECIAL MASTER/REFEREE

Pursuant to Section 805.06, Wis. Stats., for the purpose of assisting the Court in coordinating pretrial matters and conducting and completing discovery in an orderly and efficient manner, the court finds it appropriate to appoint a Special Master/Referee to oversee and coordinate the same.

1.      Therefore, the Honorable Michael J. Skwierawski, Milwaukee County Circuit Court Judge (ret.) is

HEREBY APPOINTED Special Master/Referee (SM/R) *pro hac vice*, effective February 19, 2015, to assist in coordinating pretrial issues and discovery matters that may arise in this action.

2. It is the order of the Court that the parties cooperate with Judge Skwierawski as SM/R in developing future scheduling recommendations and orders for this case. The current

303653:10532:2900-0746:2/19/15

1

scheduling order entered Feb. 16 by the Court will remain in effect. All counsel of record shall send their telephone, address, and email address to Judge Skwierawski at: mjskw@wi.rr.com.

3. The SM/R will be contacting the parties to set up a meeting to accomplish the aforeordered coordination wherein the SM/R is to act as intake on all issues that may otherwise come before the Court.

4. The SM/R shall have the full authority of the Court in coordinating and establishing all pretrial procedures. The SM/R shall also have the full authority of the Court to hear and decide, subject to Court review as set forth below, any other matters assigned to him by the Court. All motions filed, whether discovery or dispositive, shall initially be heard and decided by the SM/R, subject to review processes available as described below.

5. The SM/R shall have the duty and power to regulate and control all discovery matters and any discovery disputes arising in this action under Chapter 804 of the Wisconsin Statutes.

(a) The SM/R shall have the duty and the power to require the submission of reports and briefs, call meetings, and hold hearings in order to determine the status of discovery, to issue orders requiring the parties to adhere to discovery and case management dates set forth in the Scheduling Order.

(b) The SM/R shall have the power to take all measures that are necessary and proper within the Wisconsin Rules of Civil Procedure and the Wisconsin Statutes to ensure the performance of his duties.

(c) The SM/R shall act in accordance with the Wisconsin Rules of Civil Procedure, the Local Rules of this Court, the CMO, and other orders of this Court.

303653:10532:2900-0746:2/19/15                    2

6.    Except as ordered by the SM/R, the filing, service and notice of motions shall be governed by Local Rules of this Court, the Scheduling Order, and the screening and coordination of the SM/R and other orders of this Court.   The original of every document filed with the SM/R shall be filed with the Court, with working copies filed directly with the SM/R. In the event any party objects to the scheduling of a motion for summary judgment or other dispositive motion on grounds that discovery necessary to the issues raised by the motion is not completed, such motion for rescheduling shall be heard and decided by the SM/R.

7.    If the SM/R is of the opinion that a specific issue presented by the parties is of such fundamental importance to the progress or outcome of the case that effective case management would not be furthered by having the SM/R render a decision in the first instance, the SM/R may at his direction certify that issue to the Court. As the final arbiter of case management, the Court may, but need not, accept the certification. If the Court does not accept the certification, the SM/R shall proceed to render a decision in accordance with and subject to the terms of this Order.

8.    Exceptions to any decision made by the SM/R may be taken to this Court and must be filed with the Court within five (5) business days of the issuance of the decision. Review by the Court shall be based on the materials and record before the SM/R. No additional

303653:10532:2900-0746:2/19/15                3

filings will be permitted unless good cause and exceptional circumstances are demonstrated by the requesting Party. The Court has full authority to modify or set aside the ruling of the SM/R but will do so only if the ruling is based on an erroneous exercise of discretion. Unless an exception is taken, any ruling by the SM/R shall automatically and without hearing be adopted and entered as a ruling of the Court within five (5) business days of submission by the SM/R to the Court and parties. All decisions made by the SM/R shall be appealable after the final disposition of this case, to the full extent and as if made by this Court. A party need not take exception to a decision by the SM/R in order to preserve the issue for appeal, either on an interlocutory basis or as an appeal of a final order.

9.     (a)     The SM/R shall be reasonably available to hear matters promptly and at such times as may be convenient, at the discretion of the SM/R. Argument may be heard by the SM/R in person or by telephone.

(b)     Hearings will be held at places directed by the SM/R. The SM/R may, in his discretion, arrange for a court reporter to be present at hearings and shall provide to plaintiffs' and defendants' representatives, a copy of the transcript of the hearing promptly thereafter. The cost of the court reporter shall be borne jointly by the plaintiffs and defense in the same manner as set forth in paragraph 11. Any party ordering an additional copy of the transcript shall be responsible for the cost of such transcript.

(c)     All decisions of the SM/R shall be accompanied by supporting reasons and shall be transmitted, in writing, to counsel of record. Except for good cause shown or by stipulation of the parties to a dispute, the SM/R shall issue a decision on all disputed matters

303653:10532:2900-0746:2/19/15                    4

within fifteen (15) business days of the hearing on any motion, or within fifteen (15) business days of the conclusion of the briefing if no oral arguments are scheduled.

10. SM/R may employ other persons to provide clerical, secretarial, and research assistance; such persons shall be under the supervision and control of the SM/R, who shall take appropriate action to insure that such persons preserve the confidentiality of matters submitted to the SM/R for review. The parties shall not be separately responsible for the cost of employing clerical or secretarial help. To the extent research support is deemed necessary by the SM/R, it may be directed and the costs thereof borne by the parties as set forth in paragraph 11, except it shall be at the lower hourly rate ordinarily charged by such research associate.

11. (a) The SM/R shall be compensated at the rate of four hundred fifty dollars ($450) per hour, billed no more often than monthly, for services rendered, and also shall be reimbursed for all reasonable and necessary expenses.

(b) The allocation of fees and expenses of the SM/R is to be determined by the SM/R in an equitable manner, among all parties participating in a motion, conference, or other issue resolution process. The contributions of the various parties, if there is an issue therewith, are to be resolved in a meeting with the SM/R and/or in the CMO.

(c) The SM/R shall submit statements to the parties for payment. The statements shall state the total amount of time spent and the type of services and work performed during such time. Expenses shall be itemized.

12. All files of the SM/R, including all submissions by all parties in connection with this Order, shall become part of the formal record in this action, and shall be considered part of the record on appeal pursuant to § 809.15, Wis. Stats. by virtue of the filing requirement in Para. 6

303653:10532:2900-0746:2/19/15                    5

5

above. The SM/R shall file the original of any orders or decisions issued by him directly with the Court.

13. If the Parties stipulate and agree, the SM/R may also act as a mediator from time to time to attempt to facilitate settlement, in any manner consistent with the Wisconsin Alternative Dispute Resolution statutes and rules.

IT IS SO ORDERED this 19th day of February, 2015.

BY THE COURT:

Honorable John J. DiMotto
Circuit Court Judge, Branch 41



¶112 ANNETTE KINGSLAND ZIEGLER, J. *(concurring in part, dissenting in part).* The court denies Newtek's petition for a supervisory writ. I join that denial. I depart, however, from the court's decision to nevertheless address broader underlying issues because this court's determination should end with the fact that Newtek's petition fails for procedural reasons. I will now discuss why I depart from my colleagues.

¶113 Under Wis. Stat. § (Rule) 809.71:

A person seeking a supervisory writ from the supreme court shall first file a petition for a supervisory writ in the court of appeals under s. 809.51 unless it is impractical to seek the writ in the court of appeals. A petition in the supreme court shall show why it was impractical to seek the writ in the court of appeals . . . .

Wis. Stat. § (Rule) 809.71. Newtek did not first file a petition for a supervisory writ in the court of appeals. Nor did Newtek provide an adequate justification for its failure to do so (Newtek points only to the fact that the court of appeals denied its procedurally and substantively dissimilar request to appeal from a nonfinal order).

¶114 Even if Newtek had met Wis. Stat. § (Rule) 809.71, under our precedent "[a] petition for a supervisory writ will not be granted unless," inter alia, "the request for relief is made promptly and speedily." Burnett v. Alt, 224 Wis. 2d 72, 96-97, 589 N.W.2d 21 (1999) (quoting State ex rel. Oman v. Hunkins, 120 Wis. 2d 86, 91, 352 N.W.2d 220 (Ct. App. 1984) (per curiam)). Newtek did not meet that condition in this case. Instead, Newtek failed to take meaningful steps toward obtaining relief for months while the referee ruled on numerous motions.

1

¶115 Thus, the court is correct to deny Newtek's petition for a supervisory writ, and that should be the end of the case. Nonetheless, the court proceeds to address a number of constitutional issues and ultimately grants Newtek relief anyway. I do not agree with court's decision to do so. While the court raises important issues, it finds itself in a less than desirable position to fully address these issues. What, precisely, occurred below was not adequately briefed or argued. We remain without the benefit of all of the circuit court's reasoning in its review of the referee's determinations. The court proceeds to determine the underlying issues without knowing whether the circuit court agreed or disagreed with the referee or reached its own conclusions. If the judge did so independently rule, it could be that it is, at most, harmless error to have assigned such broad authority initially to the referee. Because this case should be decided on more narrow grounds and we are without a full record, I would not unnecessarily delve into the many complex constitutional questions the court feels compelled to address.

¶116 Newtek petitioned this court for a supervisory writ. Simply stated, it did not meet the requirements for the issuance of the writ. This should end the analysis. Because the court continues further, I respectfully concur in part and dissent in part.

¶117 REBECCA GRASSL BRADLEY, J. *(concurring in part, dissenting in part).* Universal Processing Services of Wisconsin, LLC, doing business as Newtek, petitioned this court for a supervisory writ only after first acquiescing to discovery under the Order of Reference (the "Reference"), receiving an adverse summary judgment decision, and failing to persuade the court of appeals to grant interlocutory review. Now, Newtek raises various challenges to the Reference, under which it engaged in discovery without objection for nearly a year. Because Newtek's objections are untimely and not properly before this court, I concur in the majority's decision to deny the petition for a supervisory writ.[1]

¶118 Nevertheless, I respectfully dissent from the majority's declaration of rights pursuant to this court's superintending authority under the Wisconsin Constitution. Although I agree with the majority's conclusion that the Reference impermissibly delegated the circuit court's constitutionally vested judicial power to the referee,[2] I disagree with its decision to grant retrospective relief to a party that sat on its rights and did not follow proper

---

[1] Accordingly, I agree with and join the majority opinion's analysis in Part II to the extent it concludes "the petition is not properly before this court." Majority op., ¶36.

[2] I join parts I and V of the majority opinion. Additionally, I join Part IV of the majority opinion, except its determination that "the parties will be irreparably harmed should a decision on the validity of the Order of Reference be delayed until after final judgment and appeal." Majority op., ¶81. I would not reach the issues discussed in Part VI of the majority opinion.

1

procedures when petitioning this court.[3]  The majority opinion, in effect, grants the writ despite technically denying it.  I disagree with the majority's approach and would instead employ this court's superintending authority to prospectively vacate the Reference to the extent it violates the Wisconsin Constitution.[4]

I

¶119 Two procedural deficiencies hamper Newtek's petition. First, Newtek skipped the court of appeals without an adequate justification and instead filed its petition first in this court.  Second, Newtek failed to timely object to the Reference. Either deficiency alone provides a sufficient basis for denying the writ; together, they prove fatal.  See Burnett v. Alt, 224 Wis. 2d 72, 96, 589 N.W.2d 21 (1999).

A

¶120 Wisconsin Stat. § (Rule) 809.71 (2015-16)[5] establishes the procedure for asking this court to issue a supervisory writ:

> A person may request the supreme court to exercise its supervisory jurisdiction over a court and the judge presiding therein or other person or body by filing a petition in accordance with s. 809.51.  A person seeking a supervisory writ from the supreme court

---

[3] I therefore agree with much of Part III of the majority opinion, except that I would discuss the merits of the petition prospectively only with respect to these parties, so as to provide guidance to courts and litigants.

[4] As a result, I do not join Part VII of the majority opinion.

[5] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

> shall first file a petition for a supervisory writ in the court of appeals under s. 809.51 unless it is impractical to seek the writ in the court of appeals. A petition in the supreme court shall show why it was impractical to seek the writ in the court of appeals or, if a petition had been filed in the court of appeals, the disposition made and reasons given by the court of appeals.

In this case, Newtek did not file a petition for a supervisory writ in the court of appeals before filing its petition in this court; consequently, this court will grant the writ only if Newtek "show[s] why it was impractical to seek the writ in the court of appeals," as § (Rule) 809.71 requires. See Burnett, 224 Wis. 2d at 96. To justify ignoring the words of the statute and filing with us first, Newtek explains it "determined that it would be impractical to petition the court of appeals to issue a writ directing the circuit court to vacate the appointment" after "the court of appeals declined to review the referral on Newtek's petition for interlocutory review."

¶121 Like the majority, I am not persuaded that the court of appeals' denial of interlocutory review made it impractical for Newtek to seek a supervisory writ from that court. See majority op., ¶¶41-44. Interlocutory review and supervisory writs are distinct procedural devices and implicate different legal standards. The court of appeals may permit an interlocutory appeal if it determines that immediate review of a non-final order will "[m]aterially advance the termination of the litigation or clarify further proceedings in the litigation," "[p]rotect the petitioner from substantial or irreparable injury," or "[c]larify an issue of general importance in the administration of justice." Wis. Stat.

3

§ 808.03(2)(a)-(c). By contrast, a "supervisory writ . . . serves a narrow function: to provide for the direct control of lower courts, judges, and other judicial officers who fail to fulfill non-discretionary duties, causing harm that cannot be remedied through the appellate review process." State ex rel. Kalal v. Circuit Ct. for Dane Cty., 2004 WI 58, ¶24, 271 Wis. 2d 633, 681 N.W.2d 110.

¶122 Although both legal standards account for possible irreparable harm in the absence of extraordinary review, they otherwise diverge: a request for interlocutory review focuses on efficient resolution of the litigation, whereas supervisory writ proceedings evaluate whether a judicial officer complied with obligations under the law. A circuit court's actions may not warrant interlocutory review on the merits but could nevertheless require correction by an appellate court exercising its supervisory authority.

¶123 Newtek presents solely a conclusory claim that petitioning the court of appeals for a supervisory writ was impractical, and as the majority correctly holds, we should not "cast doubt on the continued vitality of the 'impracticality' requirement." Majority op., ¶44. Because Newtek failed to follow the statutory procedure for issuance of a writ, this court should deny the petition.

B

¶124 Also problematic for Newtek is its substantial delay in raising any objection to the Reference. Even if this court were to look past Newtek's failure to comply with the procedures

4

in Wis. Stat. § (Rule) 809.71, Newtek's year-long compliance with the Reference undermines the merits of its petition. To obtain a supervisory writ, a party must make four showings: (1) appeal is an inadequate remedy; (2) grave hardship or irreparable harm will result from inaction; (3) the circuit court's duty is plain, and the court violated or intends to violate that duty; and (4) the request is prompt and speedy. State ex rel. Two Unnamed Petitioners v. Peterson, 2015 WI 85, ¶80, 363 Wis. 2d 1, 866 N.W.2d 165 (citing Kalal, 271 Wis. 2d 633, ¶17).

¶125 Here, Newtek fails to satisfy the fourth criterion because its request was neither prompt nor speedy. Instead of challenging the Reference on the record as soon as the circuit court entered the order, Newtek assented to discovery under the referee's supervision for months, accepting many discovery rulings without objection. Indeed, Newtek's only objections came when it received unfavorable decisions from the referee: it objected to some of the referee's discovery decisions under the procedure specified in the Reference, and it aggressively challenged the referee's summary judgment determinations in the circuit court, the court of appeals, and now this court.

¶126 Newtek's delayed objection to the Reference illustrates why a writ will issue only when a party makes a prompt and speedy request for relief. In the absence of a timely-request requirement, a strategic party could intentionally wait to file a petition for a writ until after the referee made an adverse decision. That way, the party could

accept favorable decisions while preserving a method of collaterally attacking an unacceptably unfavorable one. If the party suspected or knew from the outset that constitutional deficiencies marred the reference, it could then rely on a supervisory writ to secure a "do-over," essentially using the supervisory writ as an interlocutory appeal——even though a "writ of supervision is not a substitute for an appeal." Kalal, 271 Wis. 2d 633, ¶17 (quoting State ex rel. Dressler v. Circuit Ct. for Racine Cty., 163 Wis. 2d 622, 630, 472 N.W.2d 532 (Ct. App. 1991)).

¶127 Nothing prevented Newtek from petitioning the court of appeals for a supervisory writ as soon as the circuit court made the Reference. Newtek's counsel acknowledged as much during oral arguments before this court. The serious problems we identify with the Reference suggest Newtek likely possessed a meritorious claim, had it promptly pursued a remedy. But it did not do so. Because Newtek instead challenged the Reference only after losing on summary judgment, it failed to timely seek relief. This failure, coupled with its failure to seek relief from the court of appeals before petitioning this court for a supervisory writ, warrants denial of its petition and the retrospective relief it requested.

II

¶128 Despite the procedural deficiencies in Newtek's petition, I agree with the majority that this court should address the merits of the constitutional questions raised by this Reference. See Kalal, 271 Wis. 2d 633, ¶26 ("Although the

Kalals have failed to establish the existence of a plain duty and are not entitled to a supervisory writ, we will address the statutory interpretation question presented by this case."). Referees offer circuit courts a valuable tool for efficiently allocating court time and resources, so questions about the constitutionally permissible scope of an order of reference are likely to continue to arise. After thorough briefing and argument by adverse, interested parties, this petition offers the court an opportunity to evaluate a particular order for compliance with the referee statute. Examining the proper use of statutorily permissible referees allows us to give guidance to courts and litigants, thus mitigating uncertainty in Wisconsin courts. In support of that endeavor, I write to supplement the already comprehensive discussion in Part III of the majority opinion.

¶129 Our evaluation of the Reference at issue here must begin with the text of Wis. Stat. § 805.06, which authorizes the appointment of referees, establishes the circumstances under which a circuit court may make a reference, and delineates some powers and tasks that a circuit court may permissibly delegate. "A court in which an action is pending may appoint a referee," § 805.06(1), but "[a] reference shall be the exception and not the rule," § 805.06(2). Subsection (2) goes on to explain when a court may appoint a referee:

> In actions to be tried by a jury, a reference shall be
> made only when the issues are complicated; in actions
> to be tried without a jury, save in matters of account
> and of difficult computation of damages, a reference

shall be made only upon a showing that some exceptional condition requires it.

Subsection (3) then lays out the referee's powers and the circuit court's ability to describe and restrain them:

> The order of reference to the referee may specify or limit the referee's powers and may direct the referee to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearings and for the filing of the referee's report. Subject to the specifications and limitations stated in the order, the referee has and shall exercise the power to regulate all proceedings in every hearing before the referee and to do all acts and take all measures necessary or proper for the efficient performance of duties under the order. The referee may require the production of evidence upon all matters embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto. The referee may rule upon the admissibility of evidence unless otherwise directed by the order of reference and has the authority to put witnesses on oath and may personally examine them and may call the parties to the action and examine them upon oath. When a party so requests, the referee shall make a record of the evidence offered and excluded in the same manner and subject to the same limitations as a court sitting without a jury.

Wis. Stat. § 805.06(3). Under the limited circumstances when a reference is appropriate, § 805.06 affords the circuit court significant flexibility in assigning responsibilities to the referee.

¶130 When making a reference under Wis. Stat. § 805.06, however, a circuit court must remain mindful of its responsibilities under the Wisconsin Constitution. Cf. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803) ("[A]n act of the legislature, repugnant to the constitution, is void."). In Wisconsin, "The judicial power of this state shall be vested in

8

a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of general uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature . . . ." Wis. Const. art. VII, § 2. Analogizing to the federal Constitution, this court has explained that "the judicial power is the power to hear and determine controversies between parties before courts," which means that "the judicial power is the ultimate adjudicative authority of courts to finally decide rights and responsibilities as between individuals." State v. Williams, 2012 WI 59, ¶36, 341 Wis. 2d 191, 814 N.W.2d 460.

¶131 As the majority describes, "[a] referee may share judicial labor, but the Order of Reference may not allow a referee to assume the place of the judge" by exercising the judicial power the constitution confers on circuit courts. Majority op., ¶82. The judicial power vested in the circuit courts by the constitution places an outer limit on the scope of permissible delegation to referees. For help identifying that constitutional boundary, federal appellate court decisions offer two key insights.[6]

---

[6] "It is a well-settled principle of Wisconsin law 'that where a Wisconsin Rule of Civil Procedure is based on a Federal Rule of Civil Procedure, decisions of the federal courts, to the extent they show a pattern of construction, are considered persuasive authority.'" J.L. Phillips & Assocs. v. E & H Plastic Corp., 217 Wis. 2d 348, 356, 577 N.W.2d 13 (1998) (quoting Neylan v. Vorwald, 124 Wis. 2d 85, 99-100, 368 N.W.2d 648 (1985)). The current language of Wis. Stat. § 805.06 parallels the language of Rule 53 as it existed before 2003. See Fed. R. Civ. P. 53, 28 U.S.C. 782 (2000) (amended 2003).

9

¶132 First, as the majority notes, an order of reference is an improper delegation of the judicial power when it grants the authority to make dispositive decisions. See majority op., ¶67 n.35, ¶¶72-74. "The use of masters is to aid judges in the performance of specific judicial duties . . . and not to displace the court." La Buy v. Howes Leather Co., 352 U.S. 249, 256 (1957) (internal quotation mark omitted) (quoting Ex parte Peterson, 253 U.S. 300, 312 (1920)). A court issuing an order of reference must ultimately retain the adjudicative authority implicated by the judicial power derived from the applicable constitution. See United States v. Microsoft Corp., 147 F.3d 935, 954 (D.C. Cir. 1998) ("The concern about nonconsensual references turns on the determination of rights . . . . It is for this reason that special masters may not decide dispositive pretrial motions."); Stauble v. Warrob, Inc., 977 F.2d 690, 696 (1st Cir. 1992) ("[R]eference of fundamental issues of liability to a master for adjudication is not consonant with either Rule 53 or Article III."); Burlington N. R.R. Co. v. Dep't of Revenue, 934 F.2d 1064, 1072 (9th Cir. 1991) ("[T]he district court's 'rubber stamp' of the master's order is an inexcusable abdication of judicial responsibility and a violation of article III of the Constitution."); In re United States, 816 F.2d 1083, 1091 (6th Cir. 1987) ("[E]ven though the reference of nondispositive discovery matters may be justified . . . , it will be the extremely rare case where the reference of a dispositive matter (be it a pretrial motion for summary judgment or the actual trial) will be appropriate.").

10

¶133 Second, the exceptional circumstances justifying an order of reference do not exist where the trial court is merely busy, dealing with a case involving a large number of parties, or working with an unfamiliar area of law. Most federal appellate courts point to the Supreme Court's opinion in La Buy v. Howes Leather Co., 352 U.S. 249 (1957), which made quick work of several proffered justifications. The Court first concluded that "congestion [on a court's docket] in itself is not such an exceptional circumstance as to warrant a reference to a master." Id. at 259. Neither did the Court accept the case's "unusual complexity of . . . both fact and law" as an exceptional circumstance, observing that, "[o]n the contrary, . . . [complexity] is an impelling reason for trial before a regular, experienced trial judge rather than before a temporary substitute appointed on an ad hoc basis." Id. "Nor," the Court added, "does . . . the great length of time [that] trials will require offer exceptional grounds." Id.

¶134 In the decades since the Supreme Court decided LaBuy, federal appellate courts have maintained a high bar to meet the exceptional circumstances requirement. See, e.g., Prudential Ins. Co. of Am. v. U.S. Gypsum Co., 991 F.2d 1080, 1086-87 (3d Cir. 1993) (observing that no special masters employed in two cases involving, respectively, 24 foreign electronics producers and 30,000 school districts across 54 jurisdictions (first citing In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238 (3d Cir. 1983) (subsequent history omitted); then citing In re Sch. Asbestos Litig., 977 F.2d 764 (3d Cir. 1992))); Stauble,

11

977 F.2d at 695 (declining to "forge an 'exceptional condition' test for cases of blended liability and damages"); In re United States, 816 F.2d at 1089 ("[T]he interest in a quick resolution of the case is simply an alternative way of asserting calendar congestion and the possibility of a lengthy trial as exceptional conditions . . . ."); Madrigal Audio Labs., Inc. v. Cello, Ltd., 799 F.2d 814, 818 & n.1 (2d Cir. 1986) (rebuking trial judge for appointing special master because the judge stated he did not "understand anything about the merits of any patent or trademark case" and was "not about to educate [himself] in that jungle"); Jack Walters & Sons Corp. v. Morton Bldg., Inc., 737 F.2d 698, 712 (7th Cir. 1984) (concluding no exceptional condition existed in case involving "several thousand pages" of documents when trial court felt it "did not have time for a long trial").

¶135 In light of these principles, the deficiencies in the Reference here are readily apparent. When informing the parties of its intent to appoint a referee, the circuit court cited the 450 cases on its docket, explaining that it did not want "to expend a lot of time dealing with [the parties'] discovery bickering" or be a "personal slave to [their] discovery disputes." The court did not want to "waste precious court time" that it could "give to other cases." On its face, the final Reference granted the referee "the full authority of the [c]ourt to hear and decide, subject to [c]ourt review . . . , any other matters assigned . . . by the [c]ourt. All motions filed, whether discovery or dispositive, shall initially be

12

heard and decided by the [referee], subject to review processes" as described elsewhere in the Reference.

¶136 Put plainly, because the circuit court was busy and did not want to deal with the parties, it gave the referee authority over all matters in the litigation——including dispositive pretrial motions. That delegation "amounted to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation." LaBuy, 352 U.S. at 256.

III

¶137 It is with regard to invocation of this court's constitutional superintending authority that I depart most significantly from the majority opinion. The Wisconsin Constitution provides: "The supreme court shall have superintending and administrative authority over all courts." Wis. Const. art. VII, § 3. This court has interpreted its superintending authority as "a grant of power" that is "unlimited in extent" and "indefinite in character," State v. Jerrell C.J., 2005 WI 105, ¶40, 283 Wis. 2d 145, 699 N.W.2d 110 (quoting State v. Jennings, 2002 WI 44, ¶13, 252 Wis. 2d 228, 647 N.W.2d 142), although the precise scope of that authority is not without controversy, see id., ¶146 (Prosser, J., concurring in part, dissenting in part).

¶138 Superintending authority is a power that the court does not and should not use lightly. Arneson v. Jezwinski, 206 Wis. 2d 217, 226, 556 N.W.2d 721 (1996) (citing In re Phelan, 225 Wis. 314, 321, 274 N.W. 411 (1937)). At its core,

13

superintending authority "enables the court to control the course of ordinary litigation in the lower courts of Wisconsin." Id. (first citing Phelan, 225 Wis. at 320-21; then citing State ex rel. Fourth Nat'l Bank of Phila. v. Johnson, 103 Wis. 591, 613, 79 N.W. 1081 (1899)).  Similar to the court's standard for issuance of a supervisory writ, "to invoke the superintending power to correct an error of the trial court, it is necessary to establish that an appeal from a final judgment is inadequate, and that grave hardship will follow a refusal to exercise the power."  State ex rel. Hutisford Light, Power & Mfg. Co. v. Grimm, 208 Wis. 366, 371, 243 N.W. 763 (1932); see also Jerrell C.J., 283 Wis. 2d 145, ¶145 (Prosser, J., concurring in part, dissenting in part) ("The purpose of this ['superintending control over inferior courts'] jurisdiction is to protect the legal rights of a litigant where the ordinary processes of action, appeal and review are inadequate to meet the situation, and where there is need for such intervention to avoid grave hardship or complete denial of rights." (alterations in original) (quoting John D. Wickhem, The Power of Superintending Control of the Wisconsin Supreme Court, 1941 Wis. L. Rev. 153, 161-62)).

¶139 Retrospective application of this court's superintending authority is not appropriate in this case because Newtek's delay in seeking relief from the Reference discredits its claim of grave harm.  By objecting to the Reference only after the referee decided the motion for summary judgment, Newtek showed its hand: it challenges the referee's authority as

14

a means to achieving a different outcome on the merits. Presumably, Newtek would not have pursued extraordinary relief to vacate the Reference if the referee had decided summary judgment and the other challenged discovery decisions in Newtek's favor. Those decisions present questions reasonably handled by means of an ordinary appeal, and Newtek should not now receive extraordinary relief when it submitted to months of decisions by the referee, protesting only after receiving an adverse result.

¶140 At the same time, the circuit court's improper delegation of the judicial power reflects an undeniable constitutional deficiency in the Reference. Allowing the case to proceed under the Reference without alteration could lead to the nonsensical result of the parties completing pretrial proceedings under an order that this court declared partially unconstitutional. To the extent any additional proceedings occur under the Reference, the right of all parties to an adjudication by a circuit court vested with the judicial power under the Wisconsin Constitution remains squarely at issue. Accordingly, prospectively vacating the order to the extent it contravenes the Wisconsin Constitution is an appropriate, limited application of our superintending authority over Wisconsin courts for the purpose of preserving the rights of these parties going forward.

IV

¶141 On the whole, Wisconsin's circuit courts do an admirable job of resolving complex disputes amidst crowded

15

dockets, and the rules of civil procedure permit them to appoint a referee to facilitate expeditious resolution of some of those cases under exceptional circumstances. But when making a reference as allowed by rule, the circuit courts must heed their responsibilities under a higher authority, the Wisconsin Constitution. By improperly delegating judicial power to the referee, the Reference at issue here transgressed an important constitutional limitation. Although I would deny the petition for a supervisory writ because Newtek did not timely present it in a procedurally proper manner, I conclude that the Reference's constitutional infirmities require a limited exercise of this court's superintending power to prospectively vacate the Reference to the extent it denies these parties their constitutional rights. I therefore respectfully concur in part and dissent in part.

¶142 I am authorized to state that Justice DANIEL KELLY joins this opinion.

16